Such is the case under the BPT.

Consolidation Coal Company, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Bessie L. Stajduhar, Respondents.

Consolidation Coal Company, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and George Stajduhar, Respondents.

Argued March 2, 1978, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*Andrew Rose,* with him *Edward C. Schmidt,* and *Rose, Schmidt, Dixon, Hasley & Whyte,* for appellant.

*Benjamin L. Costello,* with him *Mary Ellen Krober,* Assistant Attorney General, and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE BLATT, September 5, 1978:

Two decisions of the Workmen's Compensation Appeal Board (Board) have been consolidated for argument here, one awarding death benefits to Bessie L. Stajduhar, widow of George Stajduhar (claimant), and the other suspending disability benefits to the claimant for the period following the filing of his petition until the time of his death.

The claimant filed a petition on October 18, 1974 seeking disability benefits for anthracosilicosis pursuant to Section 108(q) of The Pennsylvania Workmen's Compensation Act[1] (Act), 77 P.S. §27.1(q). Prior to the rendering of a referee's decision, the claimant died, and his widow filed a separate claim petition alleging that his death was due to anthracosilicosis. The two claims were merged for purposes of hearing, but the referee issued two separate decisions.

With respect to the claim for lifetime benefits, the referee found that the claimant "suffered residual disability due to anthracosilicosis," but he also found "that the aforementioned residual disability due to anthracosilicosis was not in itself totally and permanently disabling to the claimant nor would said residual disability in itself disabled [sic] the claimant from performing his regular occupation of timberman, in the absence of the carcinoma which eventually led to

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 et seq.

his demise.'' In addition, the referee made the following conclusions of law:

> The claimant having failed to prove that his residual disability due to anthracosilicosis was disabling within the meaning of Sections 306(a) or 306(b) of the Act, as a matter of law must have his prayer for compensation denied.

> The defendant having failed to successfully rebutt [sic] the presumption of the claimant's exposure in a hazardous occupation . . . the claimant is entitled to the benefits provided by the Act.

On the basis of these findings and conclusions of law, the referee "suspended'' compensation as of August 8, 1974, but directed the Consolidation Coal Company (Consolidation), the claimant's employer, to pay certain transcript fees. On appeal by Consolidation, the Board reversed the referee's award of the transcript fees but affirmed the decision in all other respects. Consolidation has petitioned us to review this decision, docketed at No. 737 C.D. 1977, contending that the Board erred in suspending compensation after having found that the claimant was neither totally nor partially disabled from anthracosilicosis.

Our review of this decision has been complicated by the imprecise language of the referee's conclusions of law, and it is difficult to determine whether or not an "award'' was actually made to the claimant. Nevertheless, we believe that by concluding that the claimant had failed to prove either a total disability within the meaning of Section 306(a) of the Act, 77 P.S. §511, or a partial disability within the meaning of Section 306 (b), 77 P.S. §512, the referee could not, as a matter of law, have made an "award.'' Total and partial disability are the only forms of compensable disability recognized by the Act, and we are unable to locate any

statutory authority for the term "residual disability" used by the referee. Moreover, we believe that the referee clearly erred in concluding that the claimant was entitled to benefits because the defendant-employer had failed to rebut the presumption of exposure in a hazardous occupation.

Under the provisions of the Act, a claimant seeking compensation for an occupational disease must show two things: (1) that he has sustained "disability or death resulting from such disease [as defined in 77 P.S. §27.1] and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease . . ." 77 P.S. §411(2), and (2) that his disease, as a type of "injury," is one "arising in the course of his employment and related thereto," 77 P.S. §411(1). If a claimant has been employed at the time of or immediately before his disability in an occupation or industry in which the occupational disease is a hazard, a special provision of the Act, 77 P.S. §413, provides a rebuttable presumption that the disease arose out of his employment. Unless rebutted, the presumption relieves the claimant of the burden of showing a causal relationship between exposure to a hazard and the resulting disability. *Workmen's Compensation Appeal Board v. Commonwealth,* 19 Pa. Commonwealth Ct. 499, 338 A.2d 758 (1975). This presumption relates *only* to the second element of his burden of proof, however, and the claimant must nevertheless prove that he is, in fact, disabled by the disease. The referee found that the claimant here had failed to prove such a disability, and the fact that the employer did not rebut the presumption of hazardous employment cannot, as the referee erroneously concluded, entitle the claimant to benefits. The claimant was clearly *not* entitled to an "award" of compensation.

Inasmuch as the claimant did not receive an award, the referee also erred in "suspending" compensation. Section 413(a) of the Act, 77 P.S. §772, gives a referee the authority to suspend

a notice of compensation payable, an original or supplemental agreement or an award of the department or its referee . . . upon proof that the *disability* of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. . . . And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the *disability due to the injury.* (Emphasis added.)

In the instant case, the referee found that the claimant had not proven a disability, so no award could have been made to him, and no award could, therefore, be "suspended" by the referee. The Board erred in affirming the referee's suspension of benefits and we are compelled to reverse its order and to deny the claimant's petition for benefits during his lifetime.

In the separate decision on the widow's claim for death benefits, the referee made the following finding of fact:

Your Referee, after a careful study and review of all of the lay and medical testimony presented in this case and the reports and records submitted into evidence finds that the decedent died on July 1, 1975. That the direct cause of

death was acute bronchopneumonia developing in an atelectatic and fibrotic left lung secondary to pleural carcinomatosis and that bilaterial anthracosilicosis of moderate severity *contributed to* the demise of the decedent. (Emphasis added.)

Apparently relying upon this finding, the referee concluded that the widow had met her burden of proving "that coalworker's pneumoconiosis and/or anthracosilicosis *contributed to* the death of her late husband within the meaning of said Act" (emphasis added) and awarded her benefits as well as funeral expenses and reasonable costs of prosecution. Repeating his finding of "residual disability" as of August 8, 1974 which he made in the decision on the lifetime claim, the referee apportioned liability equally between the employer and the Commonwealth as provided in Section 305.1 of the Act, 77 P.S. §411.1.[2] Both the employer and the Commonwealth appealed this decision to the Board, which affirmed the award. Also before us, docketed at No. 736 C.D. 1977, are the employer's and the Commonwealth's petitions for review of the award of death benefits.

The issue which we must decide is what proof is required by the Act to establish a causal connection between the claimant's occupational disease and his death. This is the first appellate case which specifi-.

---

[2] Section 305.1 of the Act, 77 P.S. §411.1, provides in pertinent part:

Any compensation payable under this act for silicosis, anthraco-silicosis or coal-worker's pneumoconiosis as defined in section 108(q) for disability occuring on or after July 1, 1973 or for death resulting therefrom shall be paid as follows: . . . if the disability begins between July 1, 1974, and June 30, 1975, inclusive, the employer shall pay fifty per centum and the Commonwealth fifty per centum. : . .

cally considers the interpretation of Section 301(c)(2), 77 P.S. §411(2), which provides:

> That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or *death resulting from such disease* and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease.... (Emphasis added.)

Section 305.1 of the Act, 77 P.S. §411.1, which establishes the method by which compensation for silicosis, anthracosilicosis, and coalworker's pneumoconiosis is to be paid, also establishes that compensation may be paid for "death resulting therefrom." We must decide, therefore, whether or not the claimant's widow proved that her husband's death resulted from anthracosilicosis.

The referee found that the claimant's anthracosilicosis "contributed to" the claimant's death, and concluded, as a matter of law, that the Act only requires proof that the anthracosilicosis "contributed to" the death. We believe, however, that the language of Section 301(c)(2) requires more than a finding that the occupational disease was a contributing factor,[3] and our review of the medical testimony in this case reveals that the referee could not have found that this claim-

---

[3] In *Workmen's Compensation Appeal Board v. Commonwealth*, 19 Pa. Commonwealth Ct. 492, 338 A.2d 760 (1975), an award of death benefits was affirmed based upon a finding that anthracosilicosis was a "significant contributory factor" in causing the claimant's death. The issue of the required causal connection however was not specifically considered in that case. The Court stated in its opinion that the issue was whether or not the claimant had established the requisite exposure to the hazard of an occupational disease in employment after June 30, 1973 as required by Section 301(c)(2) of the Act, 77 P.S. §411(2).

ant's death *resulted from* anthracosilicosis. Because of the significance of medical evidence to establish the causal connection between an occupational disease and subsequent death, we will quote at some length from the testimony of Dr. Richard L. Myerowitz, who performed the autopsy:

Q Doctor, as you might understand, we are primarily concerned with the anthracosilicosis that you found in this man on autopsy. I would like for you to indicate whether or not you believe, in your opinion, that the anthracosilicosis or coal workers pneumoconiosis contributed to this patient's death.

A I am going to have to give a long-winded answer because there is no simple answer, in my opinion. As stated in the final summary portion of my autopsy report:

'The left lung was atelectatic due to a thick pleural coat of metastatic tumor and dense fibrous tissue. There was also an acute and organizing necrotizing bronchopneumonia (cultures were not performed since this autopsy was performed after embalming had been carried out by the mortician). These lesions were superimposed upon chronic lung disease in the form of chronic bronchitis and anthracosilicosis of moderate severity (the patient had been a mine worker). The patient's death appears, thus, to be due to pulmonary insufficiency resulting from a combination of acute, subacute, and chronic diseases of the lung.'

. . . .

'Therefore, coal workers pneumoconiosis did in my opinion contribute to this patient's demise, although the underlying cause of death was, of course, carcinoma of the larynx.'

I do believe that the patient's underlying anthracosilicosis did contribute to the patient's death, but I think it is obvious from the list of findings there were many other processes going on in the patient's lungs at the time of death, including carcinoma, pneumonia and chronic bronchitis.

. . . .

Q Doctor, the contribution that the coal workers pneumoconiosis and/or anthracosilicosis played in this man's death, could you characterize it as being major or significant?

A I cannot answer that. I do not feel I have the expertise to answer that question definitely.

Q Would you say, then, or can you say that this man's coal workers pneumoconiosis or anthracosilicosis would have weakened his condition to the point where he would not be able to adequately fight of [sic] the affects [sic] of the other diseases even though they might have eventually caused his death?

A I would say that I believe the underlying chronic lung disease predisposed this patient to develop a more severe side affects [sic] from these other superimposed diseases of the lung; namely, metastatic carcinoma with collapse of one lung and pneumonia. But you are asking me to quantitate to what extent this is so and I don't believe I can do that.

Q Just to briefly sum up your testimony, Doctor, it is your opinion although the underlying cause of death was carcinoma of the larynx, you did discover anthracosilicosis in both lungs upon his death and also diffuse interstitial fibrosis and chronic inflammation of the

left lung and that is your opinion that the coal workers pneumoconiosis or anthracosilicosis contributed to the patient's death?

A Yes, but let me qualify what you just said by reemphasizing one thing. Diffuse interstitial fibrosis and chronic inflammation I do not believe to be a result of anthracosilicosis, but rather secondary to the collapse from metastatic carcinoma in the left pleura.

Although we are fully aware of the difficulty of obtaining medical evidence which unequivocally pinpoints the cause of death, particularly in cases in which the deceased suffered from a number of interrelated diseases, we believe that the Act requires medical evidence to be presented which establishes that a claimant's death *resulted from* an occupational disease, not simply that the disease was a contributing factor. Even if the result seems to be a harsh one, we may not judicially expand coverage of the Act by ignoring statutory language pertaining to qualification for benefits. *Czepukaitis v. Philadelphia and Reading Coal and Iron Co.*, 203 Pa. Superior Ct. 493, 201 A.2d 271 (1964). *See also Bambrick v. Asten Hill Mfg. Co.*, 5 Pa. Commonwealth Ct. 664, 291 A.2d 354 (1972).

The medical evidence presented in this case compels us to conclude that the claimant's death resulted from acute bronchopneumonia and cancer of the larynx which are not occupational diseases recognized by the Act, and compensation cannot be awarded for death resulting therefrom. The referee and the Board erred in accepting proof of a causal connection which was less than that required by the clear language of the Act, and we must, therefore, reverse the award of benefits to the claimant's widow just as we have reversed the award for benefits to the claimant during his lifetime.

### ORDER IN 736 C.D. 1977

AND Now, this 5th day of September, 1978, the order of the Workmen's Compensation Appeal Board, dated March 10, 1977, awarding compensation to Bessie L. Stajduhar, widow of George Stajduhar, is hereby reversed.

### ORDER IN 737 C.D. 1977

AND Now, this 5th day of September, 1978, the order of the Workmen's Compensation Appeal Board, dated March 10, 1977, is reversed and the compensation claim of George Stajduhar is hereby denied.