Goldie Evon, Widow of Paul, Petitioner *v.* Workmen's Compensation Appeal Board (U.S. Steel Corporation and Commonwealth of Pennsylvania), Respondents.

Marian Gannon, Widow of Michael, Petitioner *v.* Workmen's Compensation Appeal Board (U.S. Steel Corporation and Commonwealth of Pennsylvania ), Respondents.

Argued June 4, 1981, before Judges MENCER, CRAIG and MACPHAIL, sitting as a panel of three. Reargued June 8, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR., CRAIG, MAC-PHAIL and DOYLE.

*Lawrence R. Chaban,* with him *J. Scott Leckie* and *Kenneth J. Yablonski,* for petitioners.

*Louis A. Raimond,* for respondent, U. S. Steel Corporation.

*Richard F. Faux,* with him *James D. Strader,* and *Lisa Roth,* Assistant Attorney General, for respondent, Commonwealth of Pennsylvania.

OPINION BY JUDGE ROGERS, December 10, 1982:

We consolidated for argument the appeals of Goldie Evon and Marian Gannon from orders of the Workmen's Compensation Appeal Board overturning referees' decisions awarding them compensation on fatal claim petitions in which they alleged that their husbands' deaths resulted from work-related coal workers'[1] pneumoconiosis. The issue in each case is

---

[1] This matter was reassigned to the writer on October 25, 1982.

that of whether the claimant had shown that the death of her husband resulted from the disease; and the statutory provision applicable is Section 301(c)(2) of The Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411(2), which provides pertinently as follows:

The terms "injury, personal injury," and "injury arising in the course of his employment," as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act: Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death *resulting from such disease.* . . . (footnote omitted) (emphasis added).

In the case of Goldie Evon's petition the referee found that her husband's condition of pneumoconiosis was a contributing cause of his death by myocardial infarction. In the case of Marion Gannon's petition another referee found that the pneumoconiosis accelerated her husband's death by myocardial infarction and that the disease was one of the causes of the death.

The Workmen's Compensation Appeal Board's actions of reversing the referee's award of benefits in both cases were grounded on the case of *Consolidation Coal Co. v. Workmen's Compensation Appeal Board,* 37 Pa. Commonwealth Ct. 412, 391 A.2d 14 (1978), which the board read as holding that the provision of Section 301(c)(2) that the death, or disability, for which compensation is sought must be one "resulting from such disease," will not be satisfied by proof that the disease was a contributing or accelerating cause only. The medical testimony in *Consolidation Coal* which this court decided did not demonstrate that the death resulted from the disease is reproduced in the court's opinion in that case. While the doctor said

that he believed that the disease contributed to the death he also testified that he could not quantitate to what extent it predisposed his patient to develop more severe side effects from other superimposed diseases; and he never testified that the disase was a contributing or acclerating cause of death. While we did not declare in that case that where the disease is a contributing cause or an accelerating cause of death or disability it was not compensable, we did write that the Act requires medical evidence to be presented "which establishes that a claimant's death *resulted from* an occupational disease, not simply that the disease was a contributing factor." (Emphasis in original.) *Id.* at 422, 391 A.2d at 19. The Appeal Board has not been alone in its state of bemusement over this language, as witness the cases of *Elliott v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 70, 425 A.2d 885 (1981); *Refosco v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 74, 425 A.2d 887 (1981); *Vargo v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 77, 425 A.2d 888 (1981); and *Hauck v. Workmen's Compensation Appeal Board,* 47 Pa. Commonwealth Ct. 554, 408 A.2d 585 (1979). In these cases, the court, fixing on *Consolidation Coal,* made declarations to the effect that conditions which contribute to death but are not related to the immediate cause of death are insufficient to support an award and that a claimant is required to show that the occupational disease "in and of itself could have resulted in the death." We today disapprove such statements insofar as they are inconsistent with the true test in this class of case which is as follows:

Neither Section 301(c)(2) nor any other provision of The Pennsylvania Workmen's Compensation Act requires that the death or disability be solely caused by the occupational disease, or

that the occupational disease itself must be the active agency which terminates life or brings about disability. Likewise the statutes do not exclude death as compensable where the occupational disease is the contributory or accelerating cause. The important factor is that there shall be a causal relationship between the disease and the death or disability.

This statement is a paraphrase of the test as stated in *Rohner v. Fox Products,* 164 Pa. Superior Ct. 610, 615, 67 A.2d 605, 608 (1949), and repeated in *DeMascola v. Lancaster,* 200 Pa. Superior Ct. 365, 369, 189 A.2d 333 (1963).[2] Section 301(c) of The Pennsylvania Occupational Disease Act, Act of June 21, 1939, *as amended,* 77 P.S. §1401(c) with which the Superior Court was concerned in *Rohner* and *DeMascola,* reads and still reads: "Whenever compensable disability or death is mentioned as a cause for compensation under this act, it shall mean only compensable disability or death resulting from occupational disease"—in short, it is identical to Section 301(c) of The Pennsylvania Workmen's Compensation Act, with which we are here concerned.

We now turn to the fatal claim petitions of Evon and Gannon to determine by application of that test

---

[2] The test is consistent with the Supreme Court's expression of the test for cause to be applied to a claim for disability under The Pennsylvania Workmen's Compensation Act given in *Farran v. Curtis Publishing Co.,* 276 Pa. 553, 556, 120 A. 544 (1923) where the court, holding that the board's finding that the claimant's digestive ailments were the result of a work injury were supported by competent evidence, wrote: "Both physicians, after an examination of the claimant, were of [the] opinion that her present condition was at least *in part* induced by the accident, that it was a *factor contributing* to her digestive and other troubles. This [with other evidence] was sufficient to warrant the findings above mentioned." (Emphasis supplied.)

whether the evidence supports the benefits award made by the referee.

## Evon Petition

Paul Evon was employed for approximately thirty years as a coal miner. Prior to his death, Evon had received total disability payments as a result of being disabled from coal miner's pneumoconiosis. Approximately one year after this award, Evon suffered a fatal myocardial infarction.

The referee's eighth finding of fact stated:

This Referee finds as a fact based on all the evidence received, both medical and lay, that the combined reports of Dr. Beyer, Dr. Vandyk and those of Dr. Cyril Wecht are the more credible reports inasmuch as the occupational history of the claimant was a part determiner to the type of illness the claimant had suffered, in addition, he had been disabled for a period of time prior to his death and that the decedent died on January 10, 1977 and that one of the causes of his death was coal workers' pneumoconiosis as evidenced by the medical reports and/or testimony of Drs. Beyer, Vandyk and Wecht.

We conclude that there is substantial evidence in the record to support the referee's finding.

Dr. Cyril Wecht's report concluded:

Because of the adverse effect upon the ultimately fatal disease process by the coal workers' pneumoconiosis, it is my professional opinion that Mr. Evon's death should be attributed to *both* the myocardial infarction and pneumoconiosis, the latter aggravating the deleterious clinical effects of the former, and thereby accelerating the patient's death. (Emphasis added.)

This, along with other evidence, is sufficient to meet the claimant's burden to prove that the death resulted

from the occupational disease—that it was an accelerating cause of death. *See Duquesne Light Co. v. Gurick,* 46 Pa. Commonwealth Ct. 150, 405 A.2d 1358 (1979). Thus, we reverse the Board and affirm the referee's award of benefits.

## GANNON PETITION

Michael Gannon was employed underground in the coal-mining industry for about thirty-seven years. He retired in 1974, never having filed for disability benefits. In January, 1975 Gannon died from a myocardial infarction. His widow then instituted this fatal claim petition.

The testimony of the claimant's medical expert, Dr. Cyril Wecht, was:

Q. Do you have an opinion as to whether or not Mr. Gannon's Anthraco-Silicosis contributed in any way to his death from a heart attack?

A. Yes.

Q. What is your opinion?

A. I believe that the Anthraco-Silicosis that Mr. Gannon suffered from did contribute to his eventual heart attack and death. . . . In my opinion, the Anthraco-Silicosis producing Chronic Lung Disease constituted a contributing factor which aggravated the cardiovascular problem and thereby played a contributing role in producing the myocardial infarction.

. . . .

Q. Do you have an opinion as to whether or not Mr. Gannon's Anthraco-Silicosis accelerated his death from the heart attack?

A. Yes.

Q. And what is that opinion, Doctor?

A. I believe that the Anthraco-Silicosis accelerated Mr. Gannon's death, that is to say,

that if the Anthraco-Silicosis did not exist in this case, I believe that Mr. Gannon's—Mr. Gannon most probably would not have succumbed in the fashion and at the time that he did.

This evidence clearly supports the referee's findings that the disease was an accelerating cause of death and hence compensable.

Orders reversed; appropriate judgment orders will be entered.

## Order

And Now, this 10th day of December, 1982, the order of the Workmen's Compensation Appeal Board, No. A-78476 dated July 24, 1980, is hereby reversed and judgment is entered in favor of Goldie Evon as follows:

U. S. Steel, self-insured, is hereby ordered to pay to Goldie Evon, widow of Paul Evon, $127.50 per week from January 10, 1977, as long as she remains eligible under The Pennsylvania Workmen's Compensation Act. Further, U. S. Steel is ordered to reimburse the United Mine Workers of America for a total of $519.35 in costs. Further, U. S. Steel is directed to reimburse Goldie Evon $1,500 for the reasonable costs of funeral expenses. Interest on all deferred payments shall be assessed at the rate of ten percent (10%) per annum.

The order of the Workmen's Compensation Appeal Board No. A-78041 dated July 31, 1980 is reversed and judgment is entered in favor of Marian Gannon as follows:

U. S. Steel, self-insured, is ordered to pay to Marian Gannon and her son, Mark Gannon, fatal compensation benefits at the rate of $106.00 per week, and the Commonwealth of Pennsylvania, to commence on April 9, 1975. The Defendant U. S. Steel Corporation shall pay 50 percent of the benefits and the Commonwealth of Pennsylvania the other 50 percent.

Further, U. S. Steel is directed to pay to the defendants funeral benefits in the amount of $750.00 and the Bill of Costs in a total amount of $678.44.

Interest is payable on all deferred installments of compensation at the rate of 10 percent.

---

CONCURRING AND DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I concur in the result reached in the Evon petition but must dissent to the result reached in the Gannon petition for the following reasons.

I believe that our previous holding in *Consolidation Coal* clearly expresses the proposition that a showing that the occupational disease only contributed to or accelerated a claimant's death will not meet the burden imposed by Section 301(c)(2) of the Act. In *Consolidation Coal,* we concluded:

Although we are fully aware of the difficulty of obtaining medical evidence which unequivocally pinpoints the cause of death, particularly in cases in which the deceased suffered from a number of interrelated diseases, we believe that the Act requires medical evidence to be presented which establishes that a claimant's death *resulted from* an occupational disease, not simply that the disease was a contributing factor. (Emphasis in original.)

*Id.* at 422, 391 A.2d at 19.

Moreover, in my judgment, the applicable standard under this section is found in our reasoning in *Gurick* where we concluded that a showing that the disease was *one* of the causes of death was the standard of proof required.

I agree with the majority's conclusion that a requirement that the disease be shown to have *in and of itself* caused the death is not only too harsh, but was

never intended to be the applicable burden of proof, as it would preclude benefits for many who were clearly intended to have been covered by the Act. I would overrule *Elliott* and its progeny which imposed this additional burden.

I would conclude that if the occupational disease can be shown to be one of the causes of death, not merely a contributing or accelerating cause, benefits may properly be awarded. Applying this standard, I would award benefits in the Evon petition but deny them in the Gannon petition because it failed to show that the disease was more than a contributing or accelerating cause of death.