Ernest Roth Lewis, Petitioner *v.* Workmen's Compensation Appeal Board (Pittsburgh Board of Education), Respondents.

Argued October 3, 1983, before President Judge CRUMLISH, JR., and Judges BARRY and BARBIERI, sitting as a panel of three.

*Raymond F. Keisling,* with him *David M. McCloskey, Will and Keisling,* for petitioner.

*David H. Dille,* Assistant Solicitor, with him *Robert J. Stefanko,* Solicitor for respondent, Pittsburgh Board of Education.

OPINION BY JUDGE BARRY, March 8, 1984:

This appeal results from an order of the Workmen's Compensation Appeal Board (Board) denying benefits to Ernest Roth Lewis (claimant).

Claimant, at the time of the incident, was a physical education teacher employed by the Pittsburgh Board of Education (School District). Claimant was also a football coach at Seton LaSalle High School, a private school in the Pittsburgh area having no relationship with the School District.

On August 30, 1979, claimant reported for work on a scheduled in-service day. While moving various pieces of equipment in the gymnasium, Claimant felt

a sharp pain in the back of his neck. Although claimant was experiencing considerable pain, he remained in school on August 30 and also reported for work the next day.

Claimant was eventually admitted to Mercy Hospital on September 9, 1979, in the care of Dr. Narayan Nayak, a neurosurgeon who performed an anterior cervical discectomy and iliac graft fusion. Claimant returned to work on October 29, 1979. At the hearing before the referee, claimant testified that he first experienced problems with his neck when he sustained an injury during football practice at The University of Cincinnati in 1966. Claimant testified that he occasionally had minor problems with his neck, usually requiring the services of a chiropractor. Only after the alleged injury in August 1979 did surgery become necessary.

Dr. Nayak testified that claimant had been suffering from cervical spondylosis with a root compression syndrome at C5-6 and C6-7. When asked whether claimant's injury was a result of the August 30, 1979 accident, Dr. Nayak testified, "this particular episode which you mentioned could have been directly or indirectly could have been the cause of this problem" (pp. 8 and 9 of Dr. Nayak's deposition). Dr. Nayak noted that large pieces of cartilage extruding from the injured area evidenced the fact that trauma had aggravated the problem. However, as Dr. Nayak testified on cross-examination, "since this man is involved in football coaching, I believe he would be exposed to repeated trauma to the neck and could be responsible for aggravation of this problem" (Page 13 of Dr. Nayak's deposition).

The referee granted claimant benefits. The Board, however, reversed, and concluded that the equivocal nature of Dr. Nayak's testimony prevented claimant

from establishing the necessary causal connection between the injury and the work related incident. This appeal followed.

As we stated in *Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board,* 66 Pa. Commonwealth Ct. 579, 581, 445 A.2d 843, 845 (1982):

> Where, as here, there is no obvious causal connection between a work incident and a subsequent injury unequivocal medical testimony establishing such causation must be presented . . . . And the unequivocal nature of that evidence determines its legal competency and is therefore a question of law for this Court to decide based upon our review of the entire testimony of that witness. (Citations omitted.)

We have reviewed the entire testimony of Dr. Nayak and must conclude that the Board was correct in its determination that the equivocal nature of the testimony failed to establish causation.

In *Pine Plaza Lanes v. Workmen's Compensation Appeal Board,* 61 Pa. Commonwealth Ct. 139, 142, 433 A.2d 165, 167 (1981), the Court defined equivocal testimony as, "statements which are uncertain or based on supposition or mere possibilities . . . ." Furthermore, we are not unmindful that "medical testimony need not be given . . . with unqualified certainty," *Workmen's Compensation Appeal Board v. Bowen,* 26 Pa. Commonwealth Ct. 593, 596, 364 A.2d 1387, 1389 (1976), and that "the final decision should not rest upon a few words taken out of context of the entire testimony." *Wilkes-Barre v. Workmen's Compensation Appeal Board,* 54 Pa. Commonwealth Ct. 230, 234, 420 A.2d 795, 798 (1980). In *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board,* 77 Pa. Commonwealth Ct. 202, 206, 465 A.2d 132, 134-35 (1983), we stated:

Unfortunately, the phrase "unequivocal medical testimony" may seem to import, and certainly is sometimes suggested by counsel in the heat of argument to require, a stricter and more widely applied test of medical opinion testimony than do the rules laid down in the cases just cited, to which the phrase was intended only to give a name. Certainly it is not the law, as it has been sometimes argued, that every utterance which escapes the lips of a medical witness on a medical subject, must be certain, positive, and without reservation, exception, or peradventure of a doubt. We repeat, that as to facts which a claimant must prove by medical evidence, it is sufficient that his medical expert, after providing a foundation, testify that in his professional opinion or that he believes or that he thinks the facts exist. The claimant has, in such event, produced competent evidence of the facts which, if accepted by the factfinder will support an award, even if the medical witness admits to uncertainty, reservation, doubt or lack of information with respect to medical and scientific details; so long as the witness does not recant the opinion or belief first expressed.

Our review of Dr. Nayak's testimony, shows the equivocal nature of the testimony. In a *single answer,* which is confusing at best, Dr. Nayak opined both that the August 30 accident was an aggravating factor and that the accident *could have* been an aggravating factor. In our view, this answer, coupled with Dr. Nayak's testimony on cross-examination concerning other possibilities and Dr. Nayak's original testimony on direct that the injury "could have directly or indirectly could have been the cause of his problem" cannot be classified as unequivocal for purposes of

the issue raised here. *Compare Swiderski v. Glen Alden Coal Co.*, 114 Pa. Superior Ct. 21, 173 A. 865 (1934).

In *Kepple Coach Lines v. Workmen's Compensation Appeal Board*, 70 Pa. Commonwealth Ct. 30, 452 A.2d 887 (1982), the medical expert testified that "it would seem to me" that a fall caused the injury complained of. Later, when asked if that was his opinion within a reasonable degree of medical certainty, the witness responded affirmatively. This Court stated, "by a narrow margin, the testimony can be regarded as unequivocal." *Id.* at 32, 452 A.2d at 888. We believe, however, that the "it would seem to me" language is more akin to language approved in *Dewees v. Day*, 291 Pa. 379, 382-83, 140 A. 345, 347 (1928), where the Court stated, "the words 'I think' are equivalent to 'I believe' and when used by an expert, amount to an expression of professional opinion." By contrast, the uncertainty expressed by the phrase "could have been" must be regarded as equivocal. As we stated in *Philadelphia Osteopathic*, 77 Pa. Commonwealth Ct. at 202, 465 A.2d at 134, "it is not sufficient for the medical witness to testify that the claimant's condition might have been or probably was the result of the claimant's work."

Although this is admittedly a close case, we do not believe Dr. Nayak's testimony contained the requisite level of certainty to be described as unequivocal.

The case of *Morgan v. Giant Markets, Inc.*, 483 Pa. 421, 397 A.2d 415 (1979), is not on point. There the court held that no medical testimony is needed where there is an obvious causal connection between the work-related incident and the injury. Suffice it to say that claimant, the moving party in this proceeding, has not argued that the obvious causal connection obviates the need for medical testimony. Claimant argues only

that the medical testimony is unequivocal, but as the foregoing shows, we do not agree.

The case of *Evon v. Workmen's Compensation Appeal Board,* 70 Pa. Commonwealth Ct. 325, 453 A.2d 55 (1982), is not inconsistent with this case. As *Evon* says: "The important factor is that there shall be a causal relationship between the disease and the death or disability." *Id.* at 329, 453 A.2d at 57.

We, herefore, affirm.

### ORDER

AND Now, March 8, 1984, the August 12, 1982, order of the Workmen's Compensation Appeal Board at No. A-80980 is affirmed.

---

### DISSENTING OPINION BY JUDGE BARBIERI:

I must dissent because it is clear to me that the testimony of the only medical witness in this case, read as a whole, contains opinion statements that are sufficiently positive to support the referee's finding that a medical or causal relationship exists between the aggravating injury and the disc conditions, and that, therefore, the Workmen's Compensation Appeal Board erred in reversing the referee's award. Accordingly, I would reverse and reinstate the referee's decision.

While it is true that some statements in the testimony of Dr. Narayan T. Nayak, standing alone, may be insufficient to support a finding of causal relationship, I believe that the following testimony contains opinion assertions that are sufficiently positive to support such a finding:

Q. Doctor, just a point of clarification. If the episode which I described to you actually occurred on August 30 of 1975, it is your testi-

mony that this would have been a cause or an aggravating factor in this series of factors which led to the surgery; is that correct?

A. May I bring this particular point. Do you have the operating record which was dictated on 9/12/1975?

Q. Yes.

A. Would you please refer to the second paragraph. "At the C-6-7 level, it was found that there was large pieces of cartilage that were extruded out into the formational region and root was compressed upon this." Usually we find herniation of the disc, especially in a younger person like Mr. Ernest Lewis. *This is due to an acute trauma. I have to believe,* if he has mentioned so, *that his condition was severely aggravated after the injury which was on August 30. I have to assume without doubt in my mind that this herniated disc has come from that particular incident,* but at the time of evaluation from the beginning, he has been having repeated trauma and the myelogram itself and the X-rays themselves have shown evidence of cervical spondylosis which is an ongoing, slow process. The aggravation could have been caused at the time of injury on the 30th of August, and he could have had this herniation at that time. But *this is,* again, *an aggravation at the time of injury,* in addition to the cervical spondylosis.

Q. *You are saying that the episode of August 30 was an aggravation of a preexisting condition?*

A. And was responsible for this herniation of the disc. (Emphasis added.)

As I read the above, giving to the words the interpretation that will best support the referee's findings, as I must, it amounts to this: that the claimant's injury was "due to an acute trauma," significant if not itself sufficient, *Morgan v. Giant Markets, Inc.*, 483 Pa. 421, 397 A.2d 415 (1979); that the relationship is so obvious that "I *have* to believe . . . ," if the claimant's testimony is accepted, which it was, "that his condition was severely aggravated" following the injury at work; that the doctor is "without doubt" that the herniated disc came "from that particular incident," although prefaced by the word "assume;" that *"this* is, again, an aggravation at the time of the injury;" and "that the episode of August 30 was an aggravation of a preexisting condition," which, although in the context of a leading but unobjected to question, was answered in a clear affirmative, establishing that the episode on August 30, 1979 "was responsible for this herniation of the disc."

My research indicates that this Court, the Superior Court and the Supreme Court have never required more, *but have often approved less. See Morgan; Dewees v. Day,* 291 Pa. 379, 140 A. 345 (1928) ("I think" or "I believe" approved.), *Kepple Coach Lines v. Workmen's Compensation Appeal Board,* 70 Pa. Commonwealth Ct. 30, 452 A.2d 887 (1982); *Wells/ Richard Manufacturing Co. v. Workmen's Compensation Appeal Board,* 69 Pa. Commonwealth Ct. 259, 450 A.2d 766 (1982) ("[I]n all likelihood" approved.); *Pines Plaza Lanes v. Workmen's Compensation Appeal Board,* 61 Pa. Commonwealth Ct. 139, 433 A.2d 165 (1981) ("[N]o other reason to blame it on" approved.); *Cooper Jarrett, Inc. v. Workmen's Compensation Appeal Board,* 61 Pa. Commonwealth Ct. 18, 432 A.2d 1128 (1981) ([a]pparently" approved.);

*Sacks v. Workmen's Compensation Appeal Board,* 43
Pa. Commonwealth Ct. 259, 402 A.2d 293 (1979);
*Westmoreland Casualty Co. v. Workmen's Compensation Appeal Board,* 36 Pa. Commonwealth Ct. 307, 387
A.2d 683 (1978) ("[W]ould be consistent with an injury" approved.); *Pelosi v. Overbrook Tile Co.,* 138
Pa. Superior Ct. 30, 10 A.2d 118 (1934) ("I think so"
approved.); *Rice v. Stevens Coal Co.,* 120 Pa. Superior
Ct. 15, 181 A. 516 (1935), *Swingle v. Mill Creek Coal
Co.,* 116 Pa. Superior Ct. 97, 176 A. 828 (1935)
("[F]elt that way" approved.); *Connor v. Phila. R.T.
Co.,* 98 Pa. Superior Ct. 250 (1930).

Accordingly, I would reverse the Board, and reinstate the referee's award.