Standard Steel Company, Petitioner *v.* Workmen's Compensation Appeal Board (Pruitt), Respondents.

Submitted on briefs to Judges ROGERS, PALLADINO and BARBIERI, sitting as a panel of three.

Held: Affirmed.

*Dennis N. Persin, Stewart, Belden, Herrington & Belden,* for petitioner.

*Edwin H. Beachler, McArdle, Caroselli, Spagnolli & Beachler,* for respondent, Florence Pruitt w/o Murlon T. Pruitt.

OPINION BY JUDGE BARBIERI, May 25, 1984:

Standard Steel Company (Petitioner), appeals a Workmen's Compensation Appeal Board order affirming a referee's award of benefits to Florence Pruitt, as statutory dependent of Murlon T. Pruitt, a deceased employe, for compensation due him during his lifetime and in her own right as his widow.

Murlon T. Pruitt was employed by Petitioner from 1941 until he became totally disabled on October 2, 1977. There is evidence to support the referee's findings that during this time exposure to asbestos caused his total disability and death from bronchogenic carcinoma. The referee concluded that the total disability and the death were compensable under Section 108(1) of the Pennsylvania Workmen's Compensation Act.[1] Section 108(1) reads, in pertinent part, as follows:

The term "occupational disease," as used in this act, shall mean only the following diseases.

. . . .

(1) Asbestosis and cancer resulting from direct contact with, handling of, or exposure to

---

[1] Act of June 2, 1915. P.L. 736; 77 P.S. §27.1.

The referee's conclusion of law also bases entitlement to benefits upon Sections 108(n), 301(c)(2), 301(d), 306(a) and 307(2) of the Act; 77 P.S. §§27.1.(n), 411, 412, 511 and 561(2). However, the issues involved here are raised under Sections 108(1) and 108(n). Since we affirm on liability under Section 108(1) we need not reach the issue of whether or not there is liability under Section 108(n). See Reproduced Record at 183a-184a.

the dust of asbestos in any occupation involving such contact, handling or exposure.

The referee's findings contain determinations in which he adopted the testimony of Dr. George Eastman, a Board certified internist, and that of Dr. Joshua Perper, a Board certified pathologist, who both gave unequivocal opinion testimony that the decedent's occupational exposure to asbestos was a substantial contributing factor in causing bronchogenic carcinoma which resulted in his death.[2] A key finding states:

TWENTY-FIRST: In reviewing the medical testimony presented in this case, the Referee accepts as a fact and finds as credible that the decedent's occupational asbestos exposure caused his bronchogenic carcinoma which disabled him during his lifetime and resulted in his death on September 27, 1978. The Referee accepts as credible Doctor Eastman's testimony that a hazard exists for workers in decedent's occupation for developing bronchogenic carcinoma. The Referee further finds that the incidence of bronchogenic carcinoma is substantially greater in the decedent's occupation or jobs than in the general public.[3] (Footnote added.)

---

[2] SIXTEENTH: The decedent was examined by Doctor George Eastman, a Board certified internist on June 24, 1978. Doctor Eastman testified that the decedent's asbestos exposure represented a substantial contributing factor in the etiology of his bronchogenic carcinoma. Doctor Eastman further testified that decedent's occupational caused bronchogenic carcinoma resulted in his death.

SEVENTEEN: . . . Dr. Perper testified that in his opinion decedent's occupational exposure to asbestos was a substantial contributing factor in causing his bronchogenic carcinoma and resulted in his death.

[3] *See* comment in Footnote 1.

The referee's findings are clearly supported by substantial evidence. Dr. Eastman testified

Q. What is that opinion, Doctor?

A. My opinion is that his asbestos exposure represented a substantial contributing factor in the etiology of the bronchogenic carcinoma from which he expired.

Q. Do you have an opinion, Doctor, with reasonable medical certainty whether Mr. Pruitt's occupationally caused bronchogenic carcinoma resulted in his death?

A. Yes, I do.

Q. What is that opinion?

A. The opinion is that it did.

Dr. Perper, in response to a hypothetical question posed without objection, testified:

A. My opinion is that, with a reasonable degree of medical certainty, it's my opinion that if the facts are as presented in your hypothetical question, that the exposure to asbestos as part of his occupation was a substantial factor in the production of squamous cell carcinoma which was finally the cause of his death.

Defendant argues against the sufficiency of this opinion testimony, relying upon the overruled cases of *Consolidation Coal Co. v. Workmen's Compensation Appeal Board,* 37 Pa. Commonwealth Ct. 412, 391 A.2d 14 (1978) and *Elliott v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 70, 425 A.2d 885 (1981).

In *Evon v. Workmen's Compensation Appeal Board (U.S. Steel Corp.),* 70 Pa. Commonwealth Ct. 325, 453 A.2d 55 (1982), we stated:

In these cases, the court, fixing on Consolidation Coal, made declarations to the effect that conditions which contribute to death but are not related to the immediate cause of death are insufficient to support an award and that a claimant is required to show that the occupational disease "in and of itself could have resulted in the death." We today disapprove such statements insofar as they are inconsistent with the true test in this class of case which is as follows:

Neither Section 301(c)(2) nor any other provision of The Pennsylvania Workmen's Compensation Act requires that the death or disability be solely caused by the occupational disease, or that the occupational disease itself must be the active agency which terminates life or brings about disability. Likewise the statutes do not exclude death as compensable where the occupational disease is the contributory or accelerating cause. The important factor is that there shall be a causal relationship between the disease and the death or disability.

*Id.* at 328-29, 453 A.2d at 57.

Subsequently, the Pennsylvania Supreme Court had occasion to also comment on the *Consolidation Coal* doctrine in *McCloskey v. Workmen's Compensation Appeal Board*, 501 Pa. 93, 460 A.2d 237 (1983), declaring that *Consolidation Coal* "set too stringent a standard," *id.* at 100, 460 A.2d at 240, and stated:

Therefore, we hold today that where there are multiple causes of death and the immediate cause was non-compensable, the requirements of §301(c)(2) may be met by a showing with unequivocal medical evidence that the deceased suffered from an occupational disease and that it was a substantial, contributing factor among

the secondary causes in bringing about death. Proving merely, as appellant contends, that the disease was or may have been a contributing factor is inadequate.[4] (Footnote added.)

*Id.* at 101, 460 A.2d at 241.

Since the medical testimony in this case adequately meets the standards established in *McCloskey,* and we find no error by the referee or Board, we will affirm.

ORDER

Now, May 25, 1984, the order of the Workmen's Compensation Appeal Board at Docket No. A-81415, dated August 12, 1982, is affirmed.

Judge PALLADINO dissents.

---

[4] *Accord: Manuel v. N.L. Industries,* Pa. , 466 A.2d 606 (1983). Followed: *Gilberton Coal Co. v. Workmen's Compensation Appeal Board,* 77 Pa. Commonwealth Ct. 196, 465 A.2d 713 (1983).