IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Agriculture,          :
                    Petitioner     :
                                   :  No.   1454 C.D. 2021
        v.                         :
                                   :  Submitted: September 16, 2022
Summer Pieretti (Workers'          :
Compensation Appeal Board),        :
                    Respondent     :


BEFORE:     HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ELLEN CEISLER, Judge
            HONORABLE MARY HANNAH LEAVITT, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: August 22, 2023

        The Department of Agriculture (Employer) petitions for review of the
December 1, 2021 order of the Workers' Compensation Appeal Board (WCAB),
affirming, with modifications, the decision of the Workers' Compensation Judge
(WCJ), which granted the Petition to Review Compensation Benefits (Review
Petition) of Summer Pieretti (Claimant) and denying Employer's Modification
Petition.  Upon review, we affirm.

        On August 30, 2017, Claimant was employed by Employer and
sustained a left ankle injury when a car backed into her and pinned her foot and ankle
between the curb and the car.  Claimant filed a Claim Petition seeking benefits
pursuant to the Workers' Compensation Act.[1]  On September 12, 2017, Employer

_____
[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710 (the "Act").

filed a Notice of Compensation Payable (NCP) describing the accepted work injury as "left ankle-severe contusion." (Reproduced Record (R.R.) at 8a.)

On April 10, 2018, Claimant underwent surgery with Dr. Elaine Nasser from Geisinger CMC to repair tendons in her ankle. Following the surgery, her symptoms increased, with extensive nerve pain, burning, swelling, numbness, shooting pain, and trouble sleeping. Claimant was referred to physical therapy and a pain management doctor. She was also referred to Barry Bernstein, D.P.M., who is board certified in podiatric surgery and wound management, and who began treating her in February of 2019 for nerve complaints. (R.R. at 21a-24a.)

On July 24, 2019, Employer filed a Petition to Modify Claimant's benefits effective May 21, 2019, based on a labor market survey and an examination with Dr. William Spellman, a board-certified orthopedic surgeon.

On August 9, 2019, Claimant filed a Review Petition, seeking to expand the description of her work injury to include "left foot/ankle crush injury, post-surgery with residual neuropathy and pain." (R.R. at la-3a.)

In support of her Review Petition, Claimant presented the deposition testimony of Dr. Bernstein. Dr. Bernstein completed a battery of nerve blocks over a period of time to rule out a "purely isolated, damaged or scarred sural nerve" or "sural nerve neuritis" and opined that Claimant had complex regional pain syndrome (CRPS). (R.R. at 26a.) With regard to CRPS, he explained:

> The more vague one which is always difficult is [CRPS]. It plagues every physician out there with establishing a diagnosis. . . . But unlike the [[electromyograph (EMG)] being very positive reinforcing, which was a positive sural nerve neuropathy or neuritis, the secondary superimposing of the [CRPS] is always much more difficult. It's more vague in establishing a diagnosis, it is more of a grey margin. Where a nerve that has damage, you could register

2

on a very black and white exam, you know. And the complex regional pain is always more of a difficult thing to establish a diagnosis. So it's a dual diagnosis and that would be the [CRPS] as well as the sural nerve neuropathy.

(R.R. at 24a-25a.)

Dr. Bernstein further stated that he believed strongly that the CRPS was there. He explained that if you block the sural nerve, and all the pain is gone, then it would just involve the sural nerve. However, because he did not get that classic isolated sural nerve with Claimant, he knew there was another component with the nerve, which he believes is a more complex syndrome. He testified in this regard, as follows:

I try to see if a person is faking, to be honest. So I use the diagnostic nerve blocks and I make sure I follow up a couple of times to catch them lying, you know. I have to admit, she was consistent all the way through every time she went to me. Her symptoms seemed vague and global because I really do believe strongly that [CRPS] is there. But she's been consistent with me during the exam. And I actually --- again, as a somewhat cynical practitioner, I try to see if people are caught changing their story. She's been consistent each time.

So we established diagnostic nerve blocks to reinforce concern that it's not just sural nerve neuritis. Typically the sural nerve that's damaged, that's purely isolated, damaged or scarred or whatever the sequela reason is, typically many times the surgery in that area, scar tissue can exaggerate out of the incision line and entrap a nerve and that's something where a sural nerve neuropathy or neuritis can occur. . . .

So with that, a diagnostic nerve block is typically very strong in reinforcing a complete cessation of relief of pain. You put Novocain on the damaged nerve, you shut them

3

off for a little bit, complete pain is gone. Where the suspicion of [CRPS] pain is occurring, is also out of the typical realm of the nerve, an additional area, and it didn't block with those nerve blocks. . . .

* * * *

Typically a positive EMG, they're usually pretty positive for that example, most if there's two done in a row from both good practitioners. So the sural nerve was not a question. It was a done deal. Again, the [CRPS]. So not getting that classic isolated sural, we knew there was another component with the nerve and it was always nerve component-related numbness, burning, hypersensitivity, allodynia, all those things being excessive type sensation. And that's why I feel it's a more complex syndrome. Because otherwise, if you block that nerve, all her pain would be gone while it was numb 100 percent if it was just the sural nerve.

(R.R. at 24a-27a.)

Based on his conclusion that "this was obviously not a standard pain syndrome" and that Claimant had sustained a "much more complex" CRPS, he referred her to a nerve injury surgical specialist, Dr. Lee Dellon. *Id*. at 30a. Dr. Bernstein opined that Claimant could not even do sedentary work due to her nerve injury, pain, and her limited ability to walk. *Id.* at 40a-41a, 72a.

Employer presented the testimony of Dr. Spellman, who basically testified that Claimant needed further treatment but, based on his limited examination, was unable to give an expert opinion on what treatment she needs at this point. He did opine that Claimant could return to work in a sedentary capacity.

In a decision and order circulated on February 18, 2021, the WCJ denied Employer's Modification Petition and granted Claimant's Review Petition. In his Finding of Fact No. 26, the WCJ specifically determined that "based upon Dr.

4

Bernstein's evaluations, his review of diagnostic studies, [and] his physical examinations of [] Claimant, that she suffers from [CRPS]." (WCJ Decision, 2/18/21, Finding of Fact (FOF) No. 26.) Importantly, the WCJ also made a specific finding that "Dr. Bernstein has determined at this point that Claimant suffers from [CRPS], and that opinion will be explicitly accepted as Dr. Spellman did not consider that opinion, nor did he respond to Dr. Bernstein's examination, or agree or disagree with Dr. Bernstein's conclusion." *Id*., FOF No. 27. In Conclusion of Law No. 3, the WCJ found that "Claimant met her burden of proof to establish that the work injury of August 30, 2017, should be expanded to include left foot/ankle crush injury, post-surgery with residual neuropathy and pain, and neural nerve neuropathy, sural, and possibly [CRPS]." *Id*., Conclusion of Law No. 3.

Employer appealed, arguing that the WCJ's inclusion of "possibly [CRPS]" in the work injury description was not supported by substantial evidence. Specifically, Employer argued that Dr. Bernstein's medical testimony regarding CRPS was equivocal. The WCAB disagreed that Dr. Bernstein's testimony was equivocal with regard to a diagnosis of CRPS. Viewing Dr. Bernstein's opinion as a whole, the WCAB noted that while Dr. Bernstein explained the difficultly in diagnosing CRPS, he repeatedly expressed an opinion that Claimant suffered from CRPS as a result of her work injury. The WCAB ruled that there was substantial, competent evidence to affirm the WCJ's determination that Claimant suffers from CRPS as a result of her work accident. As such, the WCAB amended the WCJ's order to include CRPS, and not "possibly CRPS" as one of Claimant's work-related injuries. (WCAB Decision, 12/1/21 at 4.) Employer petitioned for review in this Court.

5

Employer raises two issues.[2]  First, it contends that the WCJ erred in finding that Claimant's work-related injury should be expanded to include "possibly" CRPS.  Second, it argues that the WCAB erred in amending the conclusion of the WCJ regarding the nature of Claimant's work injury from "possibly CRPS" to CRPS.  We will review these issues in reverse order because our resolution of the second issue renders it unnecessary for us to consider the first issue.

According to Section 413(a) of the Act, 77 P.S. § 772(a), a WCJ is authorized to modify an NCP upon the filing of a timely petition and the submission of proof in support thereof.  When an employee seeks to amend an NCP via a Review Petition to reflect further injuries, the claimant has the burden of proving a causal relationship by unequivocal medical evidence.  *Namani v. Workers' Compensation Appeal Board (A. Duie Pyle)*, 32 A.3d 850, 854 (Pa. Cmwlth. 2011).  Medical testimony is deemed incompetent if it is equivocal.  *Coyne v. Workers' Compensation Appeal Board (Villanova University)*, 942 A.2d 939, 954 (Pa. Cmwlth. 2008).  Medical testimony is unequivocal "if the medical expert, after providing a foundation, testifies that in his professional opinion that he believes a certain fact or condition exists."  *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 472 A.2d 1176, 1177  (Pa. Cmwlth. 1984).

---

[2] Appellate review in a workers' compensation matter involves "determining whether constitutional rights were violated, whether an error of law was committed, whether the practices and procedures of the Workers' Compensation Bureau were followed, and whether the findings of fact made by the WCJ and necessary to support [his] decision were supported by substantial evidence." *Rossa v. Workers' Compensation Appeal Board (City of Philadelphia)*, 839 A.2d 256, 259 (Pa. 2003) (internal citations omitted).  Substantial evidence has been defined by the Pennsylvania Supreme Court as "[s]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bethenergy Mines v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992).

The opinion of a medical expert must be viewed as a whole. *American Contracting Enterprises, Inc. v. Workmen's Compensation Appeal Board (Asplundh Tree Expert Co.)*, 616 A.2d 764 (Pa. Cmwlth. 1992). There is no requirement that every utterance that escapes the lips of a medical witness on a medical subject must be "certain, positive, or without reservation, exception, or peradventure of a doubt in order to be considered unequivocal." *Johnson v. Workers' Compensation Appeal Board (Abington Memorial Hospital)*, 816 A.2d 1262, 1267 (Pa. Cmwlth. 2003) (quoting *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 465 A.2d 132, 134-35 (Pa. Cmwlth. 1983)). There are "no magic words that a doctor must recite to establish causation." *Odd Fellow's Home v. Workmen's Compensation Appeal Board (Cook)*, 601 A.2d 465 (Pa. Cmwlth. 1991). Further, "reviewing bodies are not permitted to pick one or two sentences out of context — rather, the testimony as a whole must contain a requisite level of certainty necessary to deem it unequivocal." *Moyer v. Workers' Compensation Appeal Board (Pocono Mountain School District)*, 976 A.2d 597, 599 (Pa. Cmwlth. 2009).

In support of its contention that Dr. Bernstein's opinion regarding CRPS was equivocal, Employer cites the following excerpt from Dr. Bernstein's deposition:

> having a positive [EMG] was a very strong reinforcement of the sural nerve, neuritis, neuropathy were the considerations. The more vague one which is always difficult is [CRPS]. It plagues every physician out there with establishing a diagnosis.

(Employer's Br. at 6.)

Employer further asserts that Dr. Bernstein's testimony was rendered equivocal when he testified that "the secondary superimposing of the [CRPS] is

7

always much more difficult. It's more vague in establishing a diagnosis, it is more of a grey margin." *Id.*

At the outset, we note that these portions of Dr. Bernstein's deposition, and the others relied upon by Employer in its brief, are taken out of context. Although Dr. Bernstein spent a considerable amount of time discussing how difficult it was to diagnose CRPS, he was, as related above, able to do so in Claimant's case by performing a series of nerve blocks designed to rule out sural nerve neuritis. When read in context of his entire deposition, as set forth above, it is clear that, despite the difficulties in diagnosing CRPS, Dr. Bernstein had determined that Claimant had the condition and that this is why he referred her to Dr. Dellon, a nerve specialist, for surgical intervention.

The WCAB did not err when it concluded that there was substantial, competent evidence to affirm the WCJ's determination that Claimant suffers from CRPS as a result of her work accident. The WCJ determined in Finding of Fact No. 26, without qualification, that Claimant suffers from CRPS based upon the credible and unequivocal testimony of Dr. Bernstein. After determining that Dr. Bernstein's opinion regarding the causal relationship of CRPS to Claimant's work injury was not equivocal when his testimony is read in its entirety, the WCAB agreed that Dr. Bernstein's testimony provided substantial, competent evidence to support the WCJ's determination that Claimant suffers from work-related CRPS. However, because the inclusion of the word "possibly" in the WCJ's Conclusion of Law No. 3 was inconsistent with Finding of Fact No. 26, in affirming the WCJ's decision, the WCAB simply deleted the word "possibly." We discern no error.[3] Dr. Bernstein

---

[3] Given our disposition of the second issue, in particular our conclusion that substantial evidence supported the WCAB's conclusion that Dr. Bernstein's medical opinion was

8

testified at length regarding Claimant's symptoms, his physical exam findings, and the results of his diagnostic testing. Based upon the same, although he acknowledged that it is not always easy to diagnose, Dr. Bernstein testified that Claimant suffers from CRPS. Because Dr. Bernstein unequivocally testified that Claimant suffers from CRPS, the WCAB had the authority to correct the WCJ's decision in this regard and find that she not merely "possibly" suffers from it, but, in fact, does suffer from this condition.

The decision of the WCAB is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

---

unequivocal, it is unnecessary for us to address separately whether the WCJ erred in amending the NCP to include "possibly CRPS."

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Agriculture,       :
          Petitioner      :
                               :   No.  1454 C.D. 2021
         v.              :
                               :
Summer Pieretti (Workers'     :
Compensation Appeal Board),  :
         Respondent    :

## *__ORDER__*

AND NOW, this 22nd day of August, 2023, the December 1, 2021 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge