Duquesne Light Company, Petitioner *v.* Catherine Gurick (Widow), Respondent.

Argued May 7, 1979, before Judges WILKINSON, JR., DISALLE and MACPHAIL, sitting as a panel of three.

*John A. Lee,* for petitioner.

*Anthony J. Kovach,* for respondent.

OPINION BY JUDGE DISALLE, September 20, 1979:

Duquesne Light Company (Petitioner) seeks a reversal of the order of the Workmen's Compensation

Appeal Board (Board) granting compensation to Catherine Gurick (Claimant) for the death of Nick Gurick, her husband. To this end, Petitioner assigns three allegations of error: (1) that the medical testimony failed to establish that Nick Gurick's death resulted from occupational disease; (2) that Claimant's dependency on her husband was never established; and, (3) that Petitioner did not receive timely notice of Nick Gurick's death.

Relying on our recent decision in *Consolidation Coal Co. v. Workmen's Compensation Appeal Board*, 37 Pa. Commonwealth Ct. 412, 391 A.2d 14 (1978), Petitioner postulates that the testimony of Dr. Ayres, the only medical expert to present evidence, failed to establish that the death of Nick Gurick resulted from coalworker's pneumoconiosis, with emphysema, and cor pulmonale, severe. Rather, it is contended that this testimony indicates that these occupational diseases merely contributed to his demise. When we review Dr. Ayres' deposition, we find that the causes of death were occlusive coronary arteriosclerosis, cardiac hypertrophy, cardiac arrest, coal miner's pneumoconiosis, with emphysema, and, cor pulmonale, severe. Dr. Ayres repeatedly asserted that the occupational diseases were "one of the causes of death." Thus, it appears that Dr. Ayres believed all of the named conditions were equally responsible for his death.[1]

---

[1] We reproduce from Dr. Ayres' deposition the following relevant portions of his testimony:

Q. And in your opinion, doctor, was [coalworker's pneumoconiosis] a cause of death?

A. It was one of the causes of death.

. . . .

Q. Would you like to answer to the question, doctor?

A. The question was whether coal miner's pneumoconiosis was a contributing cause of his death?

In *Consolidation Coal Co.* we were accutely aware of the difficulty of obtaining medical evidence which unequivocally pinpoints the cause of death in cases where the deceased suffered from a number of inter-related diseases. Here, however, Dr. Ayres did not equivocate. In his opinion, pneumoconiosis *was* a cause of death; that is, it result⌐1 in his death. Consequently, and especially in light of the humanitarian purpose of The Pennsylvania Workmen's Compensation Act (Act),[2] we determine that there was substantial evidence in this record to support the Board's decision that Nick Gurick's death resulted from occupational disease.

With regard to the question of dependency, we note that this issue is peculiarly a question of fact for the compensation authorities to determine. As such,

---

Q. Yes, sir.

A. Yes.

Q. Then could you state for us one final time what the causes of death were?

A. Occlusive coronary arteriosclerosis, cardiac hypertrophy, cardiac arrest, coal miner's pneumoconiosis with emphysema, cor pulmonale severe.

Q. The coal worker's pneumoconiosis was a cause of death, correct?

A. Yes. It was one of the causes of death.

. . . .

Q. I said, did the pneumoconiosis alone bring about this man's death or would he have lived beyond September 7th?

A. I think there's a good possibility that pneumoconiosis and emphysema did contribute to his death and in all probability hastened his death but if he had had coronary occlusion in itself, his chances for survival were immeasurably increased. I can't predict exactly what would have happened at this particular time.

. . . .

Q. Then according to your diagnosis, one of the causes of death was coal worker's pneumoconiosis then?

A. Yes, I've testified to that before.

[2] Act of June 2, 1915, P.L. 736 *as amended*, 77 P.S. §1 et seq.

a claimant who has been awarded compensation is entitled to the most favorable inferences reasonably deducible from the testimony. *Walker v. Heavey*, 207 Pa. Superior Ct. 528, 219 A.2d 466 (1966); *see also Leipziger v. Workmen's Compensation Appeal Board*, 12 Pa. Commonwealth Ct. 417, 315 A.2d 883 (1974). When viewing the record to determine whether Claimant was either living with or actually dependent upon her husband at the time of his death, we find that Claimant married the decedent in 1944 and presented a marriage certificate to that effect. Claimant also testified that she was intimately familiar with the type of work her husband did for Petitioner, that she routinely washed his work clothes, and that he died "at home." On the basis of this evidence, we conclude that there is indeed substantial evidence to support the Board's finding of dependency.

The problem concerning notice involves an interpretation of Sections 311 and 315 of the Act, 77 P.S. §631 and §602. Petitioner contends that Claimant should have been precluded from receiving compensation since she failed to notify Petitioner of her husband's death within 120 days thereafter pursuant to Section 311. The obvious fallacy of this argument is that Section 311 has no applicability to fatal claim petitioners. Section 311 speaks only in terms of giving notice of "injury". The purpose this notice requirement serves is to protect an employer against submission of claims of which he has no knowledge after an opportunity for a thorough investigation has passed. On the other hand, Section 315 refers specifically to claims as a result of "death".[3] Certainly, the purpose served by a speedy investigation in cases of injury is

---

[3] It is provided therein: "In cases of death all claims for compensation shall be forever barred, . . . unless, within three years after the death, one of the parties shall have filed a petition. . . ."

not present in the event of death. We find, therefore, that the Board acted properly in concluding that Claimant, in filing within the requisite three year period, complied with Section 315 and that it was not necessary for her to give notice of her husband's death within the 120-day requirement set forth in Section 311.

Accordingly, we affirm.

## ORDER

AND Now, this 20th day of September, 1979, the order of the Workmen's Compensation Appeal Board, dated October 5, 1978, awarding benefits to Catherine Gurick is hereby affirmed and judgment is entered on the award. Payment shall be at the rate of $187.00 per week beginning on September 8, 1976, and continuing into the future within the limitations of The Pennsylvania Workmen's Compensation Act. Duquesne Light Company shall reimburse Claimant in the amount of $1,500.00 for statutory burial expenses. Duquesne Light Company shall also make the following payments to Anthony J. Kovach, Claimant's attorney:

1. For payment of statement of Dr. William W. Ayres for his deposition .. $150.00

2. For payment of statement of Audrey Repka for taking the deposition of Dr. William W. Ayres .............. 50.00

3. Attorneys fees in the amount of 20% of the award.

Interest on the award shall bear the statutory rate of 10% per annum.