Nancy Novak, Widow of Joseph Novak, Petitioner
*v.* Commonwealth of Pennsylvania, Workmen's
Compensation Appeal Board, James L. Detweiler
and Allstate Insurance Company, Respondents.

Argued April 6, 1981, before Judges MENCER,
BLATT and MACPHAIL, sitting as a panel of three.

*Edward J. Hardiman,* with him *Jeffrey T. Sultanik, Pearlstine, Salkin, Hardiman & Robinson,* for petitioner.

*James M. Marsh,* with him *Thomas R. Bond, LaBrum and Doak,* for respondents.

OPINION BY JUDGE MACPHAIL, June 10, 1981:

Nancy Novak (Claimant), widow of Joseph Novak (Decedent), appeals from an order of the Workmen's Compensation Appeal Board (Board), affirming the referee's dismissal of Claimant's fatal claim petition filed under Section 108(n) of The Pennsylvania Workmen's Compensation Act (Act).[1]

The Decedent was employed by James L. Detweiler (Employer) as an apprentice plumber from February 9, 1973 until his death on August 29, 1973. In July and August of 1973, Decedent, in the course of his employment, worked with his Employer at a number of job sites including the "Williamson" property and the "Godshall" property.

The work at the "Williamson" property, performed between July 13, 1973, and August 8, 1973,

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* added by Section 1(n) of the Act of October 17, 1972, P.L. 930, *as amended,* 77 P.S. §27.1(n), which provides in pertinent part:

The term "occupational disease," as used in this act, shall mean only the following diseases.

. . . .

(n) All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population. . . .

involved a plumbing job and the laying of sewer pipes from the old house on the property out to the street. The basement floor of the house contained stagnant water, as did an open cistern in the basement. Decedent and his employer dug a trench for the sewer line at that site in wet ground. They worked in that trench and other trenches in the same residential development for half a day on August 7, 1973. Later on August 7, 1973, the pair worked on a blocked sewer at the "Godshall" property; there both men reached into an air vent pipe to attempt removal of the blockage.

On August 8, 1973, Decedent was suddenly afflicted by a severe headache followed in the next days by a rash and a high fever, among other symptoms of an illness. Decedent was admitted to the hospital on August 14, 1973, and was discharged on August 20, 1973, with a diagnosis of and treatment for "Acute Arthritis Probably Viral." Decedent's symptoms recurred, however, and he was readmitted on August 24, 1973. Thereafter, Decedent's condition quickly deteriorated; he fell into unconsciousness and died on August 29, 1973. On the official death certificate filed August 30, 1973, the cause of Decedent's death was listed as "Bi-lateral Confluent Bronchopneumonia."

Claimant attempted to prove before the referee that the Decedent's death was not caused primarily by bronchopneumonia, but by the disease of leptospirosis contacted in the course of his employment.[2]

---

[2] Claimant has the burden of proving that Decedent's death *resulted from* an occupational disease, see *Duquesne Light Co. v. Gurick*, 46 Pa. Commonwealth Ct. 150, 405 A.2d 1358 (1979), and that under Section 108(n) of the Act, the disease was related to his employment. *See Consolidation Coal Co. v. Workmen's Compensation Appeal Board*, 37 Pa. Commonwealth Ct. 412, 391 A.2d 14 (1978).

Leptospirosis organisms or spirochetes are carried by animals, including rats, and are found in water contaminated by the infected animals. When leptospirosis organisms enter a human's system, *e.g.*, through a break in the skin, death may eventually result, usually from damage to kidneys, liver, and, in rare instances, to the lungs.

Claimant presented the testimony of two medical witnesses in support of her claim that leptospirosis was the actual cause of Decedent's death. Dr. Swire, Decedent's treating physician upon his second hospital admission, testified that with reasonable medical certainty, "He [Decedent] died of Leptospirosis." Dr. Swire's clinical diagnosis of leptospirosis was made without laboratory confirmation. The pathologist Dr. Brody testified unequivocally that leptospirosis was a cause of death and that leptospirosis was the primary disease leading to bronchopneumonia as the medical cause of death. He asserted that his autopsy report confirmed this diagnosis in its statement that the organisms of leptospirosis were recognized when the cerebrospinal fluid drawn from Decedent's body was examined microscopically.

The Employer presented as evidence Decedent's official death certificate which did not mention leptospirosis, but gave the only cause of death as bronchopneumonia. Testifying in Employer's behalf was Dr. Satz, Ph.D., an expert microbiologist employed by the state Department of Health, who directed the daily testing for infectious diseases, including leptospirosis. At the state laboratory, Dr. Satz received specimens from Decedent's body and from Employer's, and then sent them to the Center for Disease Control in Atlanta, Georgia. Test results obtained at the Center showed no indication that either specimen was infected by leptospirosis organisms.

Dr. Satz pointed out that when leptospirosis results in death, it usually occurs through damaging of the kidneys and the liver, and in rare instances the lungs. Though Decedent suffered extensive tissue damage of these organs, "no convincing spirochetes" were found in them according to Dr. Brody's autopsy report.

Dr. Satz further testified that the leptospirosis spirochete is one of many types of spirochetes similar in structure, so that a diagnosis should only be made after culturing tissues in a laboratory, *in addition to* observing them under a microscope. According to Dr. Satz, many other diseases produce symptoms similar to leptospirosis. Despite Dr. Satz' testimony which was unfavorable to Claimant, Dr. Satz could not state conclusively that Decedent did not have leptospirosis.

The threshold issue here is whether or not the referee capriciously disregarded competent evidence in finding that Decedent's cause of death was bronchopneumonia, rather than leptospirosis.

Our review of the referee's decision is severely restricted, for where the compensation authorities find against the party with the burden of proof (Claimant here), our Court is limited in its review to a determination as to whether the findings of the referee are consistent with each other and with the conclusions of law and can be sustained without a capricious disregard of competent evidence. *Repco Products Corp. v. Workmen's Compensation Appeal Board,* 32 Pa. Commonwealth Ct. 554, 379 A.2d 1089 (1977). The referee is the ultimate fact-finder, because the Board did not take additional testimony. *Smith v. Workmen's Compensation Appeal Board,* 40 Pa. Commonwealth Ct. 117, 396 A.2d 905 (1979). We must defer to the referee's determinations as to the

credibility and weight of the evidence. *Workmen's Compensation Appeal Board v. Czepurnyj*, 20 Pa. Commonwealth Ct. 305, 340 A.2d 915 (1975).

The Claimant argues that the referee capriciously disregarded the competent evidence of Dr. Swire's and Dr. Brody's testimony[3] and erroneously relied on the Employer's evidence which does not constitute competent evidence. We disagree that the Employer's evidence is incompetent. Although Dr. Satz is not a medical doctor, he testified well within the scope of his profession or practice, *Czepurnyj*, when he explained the effects of leptospirosis on a human body, the methods of testing for the disease, and the negative results of the sera testing performed on the two specimens by the Center for Disease Control. Dr. Satz' inability to prove the chain of custody of Decedent's specimen does not render the test results incompetent for workmen's compensation purposes, but only goes to the weight of that evidence.

Also affecting the weight of Employer's evidence, rather than its competence, is Dr. Satz' testimony that the most definitive method of diagnosing leptospirosis—testing in the early stages of the disease—was not performed. We note that this remark also diminshes the weight of Claimant's evidence, for the burden of proof is not upon the Employer to show that Decedent did not die from leptospirosis, but upon Claimant to prove he did die from the disease.

---

[3] Claimant also alleges that the Claimant's own testimony that the Decedent's symptoms mirrored leptospirosis was competent evidence capriciously disregarded by the referee. While Claimant was qualified to testify as to what she observed with respect to her husband's physical condition, she was not qualified to relate those observations to the specific disease of leptospirosis.

Claimant's memorandum marked Exhibit A and attached to her brief, containing statistics of clinical laboratory errors, is not part of the record before us, and thus it too cannot be considered by this Court as competent evidence.

The death certificate is further competent evidence regarding Decedent's cause of death. The weight of authority in Pennsylvania is that a properly authenticated death certificate is generally admissible as proof, *albeit not conclusive,* of both the fact and the cause of death. Only if there is some reason to suspect the trustworthiness of facts asserted in the certificate or the competency of its author, is the certificate not competent evidence of the facts in question. *Hauck v. Workmen's Compensation Appeal Board,* 47 Pa. Commonwealth Ct. 554, 408 A.2d 585 (1979). In this case the Claimant does not allege incompetency of the author nor does she assert that the facts in the certificate are untrustworthy, but only that they are incorrect. The fact that the certificate is competent evidence does not bar Claimant from presenting evidence contradicting or explaining its contents.

Because we find Employer's evidence to be competent, we do have a case of conflicting medical evidence despite Claimant's contentions to the contrary. It is well established that it is the fact-finder's function to select between conflicting medical testimony. *Allied Chemical Corp. v. Workmen's Compensation Appeal Board,* 15 Pa. Commonwealth Ct. 195, 325 A.2d 482 (1974). A referee may, in the exercise of a broad discretion, accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Bowes v. Inter-Community Action, Inc.,* 49 Pa. Commonwealth Ct. 612, 411 A.2d 1279 (1980). If the testimony accepted constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, we are precluded from disturbing findings supported by the testimony even though there is evidence to the contrary. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590,

377 A.2d 1007 (1977). Hence, it was the referee's prerogative to give more weight to Employer's evidence rather than to Claimant's evidence.

We cannot say that the referee has capriciously disregarded competent evidence merely because he has rejected some competent evidence which conflicts with other, equally competent, evidence. *Workmen's Compensation Appeal Board v. Bali Bra Manufacturing Co.*, 31 Pa. Commonwealth Ct. 643, 377 A.2d 1036 (1977). This Court has held that "capricious disregard of competent evidence" indicates a deliberate ignoring of evidence which a person of ordinary intelligence would deem important in reaching a decision. *George v. Workmen's Compensation Appeal Board*, 49 Pa. Commonwealth Ct. 435, 411 A.2d 294 (1980), or a willful and deliberate disbelief of an apparently trustworthy witness whose testimony one of ordinary intelligence could not possibly challenge. *St. Denis v. Workmen's Compensation Appeal Board*, 29 Pa. Commonwealth Ct. 375, 371 A.2d 252 (1977).

After a thorough review of the record before us,[4] we are unable to conclude that the referee capriciously disregarded Claimant's evidence that Decedent died of leptospirosis. Clearly, the referee evaluated all of Claimant's evidence, considered Dr. Satz' substantial challenge to the Claimant's medical testimony and the contents of the death certificate, and found that Claimant's evidence was insufficient to sustain her burden of proof.

Because we sustain the referee's determination that Claimant failed to prove that Decedent died from leptospirosis, we need not address the other issue of

---

[4] The care with which the record was developed and reviewed is evidenced by the seven hearings conducted by the referee, the referee's twenty-one findings of fact and the Board's lengthy and comprehensive opinion.

whether Decedent's death was related to his employment (which involves conflicting evidence of the factual circumstances) under Section 108(n) of the Act.

Accordingly, we affirm the Board's dismissal of Claimant's fatal claim petition.

### ORDER

AND Now, this 10th day of June, 1981, the order of the Workmen's Compensation Appeal Board, dated February 22, 1980, affirming, as amended, the referee's dismissal of the fatal claim petition filed by Nancy Novak is hereby affirmed.