COMBINED INSURANCE COMPANY OF AMERICA, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (LEVINE), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 24, 2000.
Decided May 10, 2000.
Reargument Denied July 19, 2000.

Robert P. Walter, Pittsburgh, for petitioner.

David S. Makara, Hazleton, for respondent.

Before McGINLEY, J., KELLEY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Combined Insurance Company of America (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that reversed a workers' compensation judge's (WCJ) order granting Employer's suspension petition and affirmed the dismissal of Jeffrey Levine's (Claimant) petition to review the notice of compensation payable. We affirm.

Claimant sustained a lumbar strain injury on July 27, 1992 and received benefits pursuant to a notice of compensation payable. On July 12, 1995, Employer filed a suspension petition, alleging that Claimant was released without restriction to return to his pre-injury position as an insurance salesman and sales manager as of December 5, 1993, and that Claimant refused in bad faith to accept that position.[1] Claimant denied the allegations and the matter was assigned to a WCJ.

Employer presented the testimony of Janet Louise Maurer, Employer's divisional sales administrator, Solomon Kahane, Claimant's manager, and Carol McMillian, a claims examiner for Employer's insurance carrier. Mr. Kahane testified about the duties involved in the sales manager position and Ms. Maurer and Ms. McMillian both testified about the notice provided to Claimant concerning the availability of the job. Both Ms. Maurer and Ms. McMillian also indicated that they had no knowledge about Claimant's intended move to Florida until Ms. Maurer spoke with Claimant on the day he acknowledged receiving the letter instructing him to return to work.

Employer also presented the deposition testimony of Jan B. Wemple, M.D., a board-certified neurosurgeon, who examined Claimant on September 14, 1993, after a referral from Claimant's treating physician. Claimant provided Dr. Wemple with a history, explaining that he began having back problems following a slip on ice in 1991, which was followed by a fall when Claimant was chased by a dog. The referral requested an evaluation for possible surgery. Based on a review of tests, an examination and Claimant's description of his job duties, Dr. Wemple believed that Claimant would be unable to perform his

---

1. On November 25, 1996, Claimant filed a petition to review the notice of compensation payable, alleging that in addition to the lumbar strain he sustained other injuries on July 27, 1992. Because no issues regarding this petition are raised in this appeal, we do not include any discussion about this petition.

pre-injury job. However, following receipt of photographs and a videotape taken in July 1993, depicting Claimant performing various activities, Dr. Wemple indicated that Claimant's limitations were not as extensive as he had believed at the time of the examination on September 14, 1993. Dr. Wemple revised his opinion, stating that as of December 5, 1993, Claimant was capable of performing light to moderate work. He approved the job description provided by Employer, concluding that Claimant could perform his pre-injury job duties as an insurance salesman/manager.

Claimant testified on his own behalf, acknowledging receipt of notice of the job opening approved by Dr. Wemple. He further acknowledged that he did not contact Mr. Kahane or Dr. Wemple and that he did not attempt to return to work with Employer. Claimant also testified that he moved to Florida on February 7, 1994 and began working as a telemarketer. He testified that his present job allowed the use of a special chair, but that with his continuing pain he would be unable to perform the driving and door-to-door sales calls required by his prior position. When presented with the photographs and a videotape over the objection of his attorney,

> Claimant acknowledged that he appears in six (6) photographs, that were marked Defense Exhibit # 2, in which he is depicted bending over a lounge chair, jumping into a swimming pool, and photographs of the Claimant walking about a pool deck.

(WCJ's decision, Finding of Fact No. 5, p. 4).

We note that the WCJ overruled Claimant's objection to the admission of the photographs (Reproduced Record, p. 63a), and Claimant's testimony about the photographs formed the basis for the WCJ's Finding of Fact No. 5, set forth above. However, the WCJ did not rule on Claimant's objection to the videotape, rather the WCJ acceded to the parties agreement.[2]

Claimant also presented the deposition testimony of Bram Riegel, M.D., board-certified in physical medicine and rehabilitation, who maintains a practice in Sarasota, Florida. Dr. Riegel treated Claimant on September 16, 1994, November 15, 1994, March 20, 1996, and August 19, 1996. Dr. Riegel did not believe Claimant could perform his pre-injury job in September of 1994 and he was not certain that Claimant was capable of performing that position in 1996.

The WCJ found Employer's witnesses more credible than Claimant and his medical witness. The WCJ specifically stated that "[t]he opinion and testimony of Dr. Wemple is credible, that the Claimant was capable of performing his pre-injury job of insurance sales manager, as of December 5, 1993, especially after reviewing the photographs and surveillance evidence, that he was capable of much greater physical activity than Dr. Wemple had been led to believe." (WCJ's decision, Finding of Fact No. 17, p. 10).

Accordingly, the WCJ formulated the following Conclusions of Law, stating that:

2. [Employer] has met its burden of proof to establish, by substantial, competent and credible evidence, that Claimant recovered from his work-related injury, to the extent that he was able to perform employment made available to him by [Employer], as of February 7, 1994.

3. [Employer] has met its burden of proof to establish that the position of sales manager was made available to the Claimant, as of February 7, 1994, which

---

**2.** At the hearing on February 15, 1996, the parties agreed that Claimant would testify about the videotape, but that Employer would call to testify the person who produced the videotape. Claimant's counsel stated that "[a]nd I would just add that I'm going to question my Client regarding the videotape under the assumption that the defense will be able to authenticate it. If they are not able to authenticate it, then I would want all testimony from my Client stricken and not considered." (Transcript of hearing, February 15, 1996, p. 43). Employer's counsel agreed with these parameters.

was medically suitable and approved by Dr. Wemple.

4. [Employer] has met its burden of proof to establish that the Claimant authenticated photographic and video evidence offered by [Employer].

5. Claimant has failed to meet his burden of proof to establish that he, in good faith, attempted to perform the sales manager position, which was made available to him on and after February 7, 1994.

(WCJ's decision, Conclusions of Law, pp. 12–13). Thus, the WCJ granted Employer's suspension petition and Claimant appealed to the Board, which reversed. The Board reasoned that the WCJ's Conclusion No. 4 was based on Finding of Fact No. 5, which was in turn based on improperly introduced exhibits. The Board explained that Employer had failed to properly authenticate the photographic exhibits as agreed to by the parties.[3] Although the Board noted that case law provides that a witness on cross-examination may authenticate a videotape or photographs by admitting that he or she is the individual depicted, the Board concluded that the WCJ should have stricken Claimant's testimony concerning these exhibits in light of the parties' agreement.

Likewise the Board concluded that Dr. Wemple could not rely on these improperly admitted exhibits to change his opinion that Claimant could perform his pre-injury job. Without Dr. Wemple's testimony, the Board concluded that Employer had not carried its burden of proving that a suspension should be granted. Therefore, the Board reversed the WCJ's grant of the suspension petition.

Employer now appeals to this Court,[4] arguing that when the record contains other substantial, competent evidence upon which Dr. Wemple relied, the WCJ committed harmless error in admitting the photographic and videotape evidence authenticated by Claimant. Specifically, Employer argues that although Dr. Wemple reviewed the pictorial evidence, he relied on Employer's written job description, which differed from Claimant's description of his duties, to formulate his opinion.

Employer relies on *Tolbert v. Gillette*, 438 Pa. 63, 66, 260 A.2d 463, 465 (1970), for the proposition that "[a] photograph must be verified *either* by the testimony of the person who took it or by another person with sufficient knowledge to state that it fairly and accurately represents the object or place reproduced as it existed at the time…." (Emphasis added). Employer then cites Claimant's testimony that acknowledges that he was the person depicted in the photographs. Employer also quotes an exchange by the attorneys and the WCJ in which Claimant's counsel admits that the individual in the photographs is Claimant.

Next, Employer cites *Pistella v. Workmen's Compensation Appeal Board (Samson Buick Body Shop)*, 159 Pa.Cmwlth. 342, 633 A.2d 230 (1993), a case that held that the WCJ should have sustained an objection to partially authenticated videotapes because no investigator testified to the time, place or accuracy of the representation even though the claimant's counsel acknowledged that the tape depicted the claimant. Employer distinguishes *Pistella* on the basis that here Claimant acknowledged that he was the person shown in the photographs *and* identified the date, time, location and circumstances surrounding the taking of the pictures. Employer noted that Claimant testified about the motel pool depicted and the depth and temperature of the water in the pool.

---

**3.** *See* Footnote No. 2.

**4.** Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988).

Based on these specifics, Employer contends that any concerns about authenticity were overcome by Claimant's pointed testimony and that his admissions readily distinguish the case before us from the circumstances in *Pistella* where there was only acknowledgement that the claimant was the individual in the video.

Employer also relies on the *Pistella* court's holding that the failure to sustain the objection was harmless error because independent medical evidence relied upon by the WCJ supported the termination of benefits. In fact, the *Pistella* court noted that the doctor relied on factors other than the video to form his opinions. Likewise, Employer here argues that there is no evidence that Dr. Wemple relied solely on the videotape and photographs to form his opinion that Claimant was capable of returning to his pre-injury job. Specifically, Employer contends that the written job description, which differed considerably from Claimant's description of his duties, was the basis for Dr. Wemple's opinion that Claimant could perform his pre-injury duties.

In response, Claimant relies on *Thompson v. Workmen's Compensation Appeal Board (Bethlehem Steel Corporation)*, 683 A.2d 1315 (Pa.Cmwlth.1996), a case with substantially similar facts. In *Thompson*, the claimant argued that the medical expert relied heavily on an improperly identified and authenticated surveillance video and that he was prejudiced by the admission of this incompetent testimony. The employer in *Thompson* conceded that it had not presented an authenticating witness, but argued that because the claimant identified himself as the person in the video performing the activities depicted on a particular date, the video was sufficiently authenticated. The *Thompson* court, relying on *Pistella*, held that the tape should not have been admitted, but based on other independent evidence in the record held that substantial evidence supported the WCJ's finding that the claimant had com-

pletely recovered from his work-related injuries.

■ Claimant argues that this is not the situation here. He discusses the agreement of the parties to strike his testimony if Employer failed to authenticate the pictorial evidence and suggests that Dr. Wemple's testimony reveals that he changed his opinion following his review of the videotape and photographs, not just on Employer's description of the job duties. We agree. Having reviewed Dr. Wemple's testimony believed by the WCJ, we conclude that the doctor revised his opinion concerning Claimant's abilities only after reviewing both the videotape and photographs in conjunction with a review of the job description. Thus, the reliance on the job description can *not* be viewed as independent evidence supporting the doctor's opinion.

■ Although *Pistella* and *Thompson* dictate that photographic evidence should not be admitted without authentication by the person who produced it, we conclude here that Claimant provided more than sufficient authentication for the photographs, having extensively described time and place and that he was the individual depicted. *Tolbert.* Therefore, we do not conclude that the WCJ erred in overruling Claimant's objection to the photographs. However, in light of the parties' explicit agreement that Claimant's testimony concerning the videotape would be stricken if the videotape was not authenticated by the producer, the WCJ erred in relying on the videotape evidence. Although Finding of Fact No. 5 only references the photographs, the WCJ's Conclusion No. 4 made no distinction between the photographs and the videotape and, therefore, is not based on properly authenticated evidence.

Moreover, Dr. Wemple relied on both the photographic and videotape evidence without making a distinction between the two and did not as Employer suggests rely on independent evidence to formulate his opinion that Claimant could perform his

pre-injury position. It is evident from Dr. Wemple's testimony that he relied on the combination of photographic and videotape evidence. Moreover, he did not rely solely on independent evidence as required by *Pistella* and *Thompson.*

Accordingly, for the reasons stated above, we affirm the Board's order.

### *ORDER*

NOW, May 10, 2000, the order of the Workers' Compensation Appeal Board, at No. A97–4939, dated September 9, 1999, is affirmed.