**KIMBERLY CLARK CORP.,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (BULLARD), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 31, 2000.

Decided Dec. 12, 2001.

Reconsideration Denied Jan. 28, 2002.

Wendy L. Slear, Philadelphia, for petitioner.

Marc S. Jacobs, Philadelphia, for respondent.

Before DOYLE, President Judge, FRIEDMAN, Judge, MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.[1]

Kimberly Clark Corp. (Employer) petitions for review of the December 6, 1999 order of the Workers' Compensation Appeal Board (WCAB), which reversed the decision of the workers' compensation judge (WCJ) granting Employer's petition to terminate Michael Bullard's (Claimant) workers' compensation benefits. We affirm.

On August 3, 1984, Claimant sustained a work-related injury while working for Employer. (WCJ's 11/13/96 Findings of Fact, No. 1.) Subsequently, Employer issued a notice of compensation payable listing Claimant's injury as a herniated disc at C5–C6. (WCJ's 11/13/96 Findings of Fact, Nos. 1–2.) On August 24, 1988, the parties executed a supplemental agreement suspending Claimant's benefits, indicating that Claimant had returned to work at wages equal to or greater than his pre-injury wage. (WCJ's 11/13/96 Findings of Fact, No. 3.) On April 18, 1989, Claimant filed a reinstatement petition, and, on September 16, 1992, a WCJ reinstated Claim-

1. This case was reassigned to the authoring Judge on October 10, 2001.

ant's temporary total disability benefits. (WCJ's 11/13/96 Findings of Fact, No. 4.)

On August 9, 1995, Employer filed a petition to terminate/modify/suspend Claimant's benefits, which is the petition at issue in this case, alleging that Claimant had, *inter alia*, fully recovered from his work-related injury. (WCJ's 11/13/96 Findings of Fact, No. 8; R.R. at 11a–12a.) On August 19, 1995, a supersedeas hearing was held;[2] in support of its request for supersedeas, Employer submitted a surveillance video, depicting Claimant's involvement in certain physical activities.

A central issue in this case relates to whether that surveillance video also was admitted as part of Employer's case-in-chief for the termination petition. On May 7, 1996, a hearing was held on Employer's termination petition. At no time during that hearing did Employer offer, or the WCJ mark, the surveillance video as an exhibit.[3] At the conclusion of the hearing, the WCJ granted Employer's termination petition.

In his decision granting Employer's termination petition, the WCJ found credible the testimony of Employer's medical expert, Gregory Tadduni, M.D. Dr. Tadduni testified that he first examined Claimant on February 2, 1995 and, giving Claimant the benefit of the doubt, placed restrictions on Claimant's ability to return to work. (WCJ's 11/13/96 Findings of Fact, No. 13.) Dr. Tadduni further testified that he also examined Claimant on January 4, 1996 and, again, placed restrictions on Claimant's ability to return to work. (R.R. at 73a; *see* R.R. at 81a, 83a.) However, after reviewing the surveillance video, Dr. Tadduni concluded that he had been "fooled twice by [Claimant] into thinking he .... had some believable ongoing restrictions.

...." (R.R. at 81a.) Consequently, Dr. Tadduni opined that Claimant had recovered fully from his work-related injury. (WCJ's 11/13/96 Findings of Fact, No. 13; R.R. at 82a.)

Both parties appealed to the WCAB, which affirmed in part and remanded in part. On remand, the WCAB directed the WCJ to render specific findings of fact and conclusions of law addressing whether the surveillance video was properly admitted as part of Employer's case-in-chief and whether Employer met its burden of proof absent the submission of the surveillance video. On remand, the WCJ reaffirmed his earlier decision and issued the following relevant findings of fact:

2. This court has reviewed the prior decision as well as the notes of testimony of May 7, 1996 and has determined that the surveillance video film was properly admitted at the time of the hearing. The practice of this court during that time period was to allow submissions of evidence off the record on occasion. The surveillance video had been submitted for Supersedeas purposes and was then presented as defense exhibit No. 1 and accepted by this court.....

3. This court would not have changed its decision that [Employer] was entitled to a Termination of Compensation Benefits had the surveillance video not been properly admitted. This court relied on the testimony of Mr. Goldman, Mr. Mazzola and Dr. Gregory Tadduni in determining the Claimant's full recovery as of January 4, 1996.

(WCJ's 6/27/98 Findings of Fact, Nos. 2–3.) Accordingly, the WCJ granted Employer's termination petition.

---

2. We note that no record was made of the supersedeas hearing.

3. Nevertheless, the WCJ's decision lists the surveillance video as Exhibit D 1.

Claimant appealed to the WCAB, which reversed the WCJ's decision. In its decision, the WCAB concluded that: (1) the surveillance video was not properly admitted because there was no evidence of record to establish that the surveillance video was introduced with respect to Employer's case-in-chief; (2) Dr. Tadduni's medical testimony regarding Claimant's ability to return to work was incompetent because his foundation for such evidence was based upon the surveillance video which was not of record; and (3) absent the surveillance video, Dr. Tadduni's medical testimony was insufficient to prove that Claimant had fully recovered from his work injury.

Employer now petitions this court for review of the WCAB's order.[4] Before this court, Employer first argues that the surveillance video was properly admitted as part of its case-in-chief because the WCJ marked and accepted the surveillance video as evidence for Employer's case-in-chief at the supersedeas hearing. Specifically, Employer relies on the WCJ's finding that the "surveillance video had been submitted for Supersedeas purposes and was then presented as defense exhibit No. 1 and accepted by this court." (WCJ's 6/27/98 Findings of Fact, No. 2.)

In its opinion, however, the WCAB noted that the record "is devoid of any manifestation" that the surveillance video was offered or introduced into evidence with respect to Employer's case-in-chief. (WCAB's op. at 6.) We, too, can find no such manifestation or any other type of documentation, such as a stipulation by counsel, memorializing the surveillance video's introduction into the record. Here, for Employer to take advantage of the surveillance video as part of its case-in-chief, the surveillance video must have been offered and admitted as an exhibit during on-the-record proceedings involving Employer's case-in-chief, i.e., the termination petition proceedings.[5] *Cf.* 34 Pa. Code § 131.52(b) (stating that, at the first hearing, the moving party *shall* offer and have marked for identification available exhibits of the moving party); 34 Pa.Code § 131.52(c) (requiring the WCJ to place into evidence as Bureau exhibits current Bureau documents pertaining to the same claim);[6] *Miller v. Workers' Compensation Appeal Board (Community Hospital of Lancaster)*, 737 A.2d 830 (Pa.Cmwlth.1999) (holding that to take advantage of an admission in a pleading, the pleading must be formally offered into evidence). That simply was not done here. It is well settled that items which are not part of the record

4. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

5. Section 131.42 of the Special Rules of Administrative Practice and Procedure Before Referees (Special Rules) states that a party has the right to submit, and the WCJ may consider, any materials relevant to the request for supersedeas "solely in relation to a request for supersedeas." 34 Pa.Code § 131.42. Therefore, because evidence introduced at a supersedeas hearing, whether it is on-the-record or off-the-record, may be ad-

mitted *solely* for purposes of that hearing, such evidence also must be offered or placed into evidence, either by the party or the WCJ, and admitted into the record pertaining to the party's case-in-chief. *See* 34 Pa.Code §§ 131.52(b) and (c); *cf.* 34 Pa.Code § 131.52(d) (stating that evidence furnished under 34 Pa.Code §§ 131.52(b) and (c) does not become part of the record unless otherwise admissible).

6. Here, the WCJ did not place the surveillance video into evidence during the hearing on the merits. Accordingly, we cannot conclude that the WCJ admitted the surveillance video for purposes of Employer's case-in-chief. *See* 34 Pa.Code §§ 131.52(c) and (d).

may not be considered by the fact-finding tribunal, or the appellate body on review. *Novak v. Workmen's Compensation Appeal Board,* 59 Pa.Cmwlth. 596, 430 A.2d 703 (1981); *see also Humphrey v. Workmen's Compensation Appeal Board (Supermarket Service),* 100 Pa.Cmwlth. 33, 514 A.2d 246 (1986). Therefore, absent any indication that the surveillance video was admitted as part of Employer's case-in-chief, the surveillance video is not evidence in the case and may not support the WCJ's findings.[7] *See Novak; cf.* Black's Law Dictionary 555 (6th ed.1990) (defining evidence as any probative matter legally presented at trial by the act of the parties and through the medium of witnesses, documents, exhibits, etc.).

■ Next, Employer contends that, even if the surveillance video was not admitted, Dr. Tadduni was not precluded from relying on it. Pennsylvania courts have carved out an exception to hearsay, holding that experts may base their opinions on otherwise inadmissible evidence so long as that evidence is of the type customarily relied upon by experts in the particular field. *See Commonwealth v. Thomas,* 444 Pa. 436, 282 A.2d 693 (1971);

*Robinson v. Jackson,* 145 Pa.Cmwlth. 211, 602 A.2d 917, *appeal denied,* 531 Pa. 647, 612 A.2d 985 (1992). However, surveillance evidence is not the type of evidence customarily relied upon by doctors in rendering medical opinions. Moreover, as the WCAB noted, there is no evidence in this case that Dr. Tadduni customarily relies on surveillance videos in rendering his medical opinions.[8] Accordingly, under the circumstances here, it was error to allow Dr. Tadduni to rely on the surveillance video in rendering his opinion.

■ Having concluded that Dr. Tadduni could not consider the surveillance video in forming his opinion, we must now address Employer's final argument that Dr. Tadduni's testimony was sufficient, absent the surveillance video, to sustain Employer's burden. In his decision on remand, the WCJ stated that he would not have changed his decision even if the surveillance video had not been properly admitted because he relied on the testimony of Mr. Goldman and Mr. Mazzola (the two individuals who conducted the surveillance) and Dr. Tadduni in determining that Claimant was fully recovered. Notwithstanding this statement, as a matter of

---

7. Employer argues that, because the Special Rules, 34 Pa.Code ch. 131, do not require that hearings be transcribed, hearings, and thus the evidence presented there, need not be "of record." While we agree that there is no Special Rule stating that all hearings must be transcribed, this does not mean that the hearings are not required to be "of record." Section 418 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *added by,* Act of June 26, 1919, P.L. 642, 77 P.S. § 833, plainly states that the WCJ *"shall* make *a record* of hearings...." 77 P.S. § 833 (emphasis added). Thus, the admission of the surveillance video under the circumstances here is contrary to the plain language of section 418 of the Act.

Nevertheless, Employer argues that, obviously, it believed the WCJ had admitted the surveillance video at the supersedeas hearing for purposes of the Employer's case-in-chief; otherwise, Employer would have resubmitted the surveillance video at the hearing on the termination petition. Employer contends that it is grossly inequitable to punish Employer simply because the evidence was accepted at an off-the-record hearing. We are not persuaded by this argument. Employer's erroneous belief simply does not abrogate the requirements of the Act or the Special Rules.

8. Indeed, Dr. Tadduni testified that, in evaluating Claimant's condition and forming a diagnosis, he relied upon medical reports from other physicians, operative reports, physical therapy notes, and medical diagnostic studies such as an MRI and EMG and that he customarily relies upon these types of records when evaluating a patient's condition and forming a diagnosis. (*See* R.R. at 44a–51a.)

law, we cannot conclude that Employer met its burden of proof.

■ In a termination proceeding, where, as here, the claimant continues to complain of pain, the employer's burden is to present unequivocal *medical* testimony that the claimant is fully recovered and can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or link them to the work injury. *Murphy v. Workers' Compensation Appeal Board (Mercy Catholic Medical Center)*, 721 A.2d 1167 (Pa.Cmwlth. 1998), *appeal denied*, 560 Pa. 691, 742 A.2d 678 (1999). Because Mr. Goldman and Mr. Mazzola are not physicians, their testimony is not competent evidence to support a termination. Additionally, it was only after Dr. Tadduni reviewed the surveillance tape that he opined that Claimant did not have any restrictions and was fully recovered from his work injury.[9] (R.R. at 81a 84a.) Therefore, without Dr. Tadduni's revised opinion, which was based on the surveillance video, there is no substantial evidence to support a termination of Claimant's benefits. *See Combined Insurance Company of America v. Workers' Compensation Appeal Board (Levine)*, 754 A.2d 59 (Pa.Cmwlth.) (holding that where doctor revised his opinion concerning claimant's abilities only after reviewing video surveillance film, which was not authenticated, in conjunction with a review of the job description, doctor's reliance on job description was not independent evidence supporting doctor's revised opinion), *appeal denied*, 564 Pa. 716, 764 A.2d 1072 (2000).

Accordingly, we affirm the WCAB's order.

### ORDER

AND NOW, this 12th day of December, 2001, the order of the Workers' Compensation Appeal Board, dated December 6, 1999, is hereby affirmed.

DOYLE, President Judge, Dissenting.

Because I disagree with the Majority that the surveillance videotape depicting Claimant's involvement in certain physical activities was not properly admitted into evidence in Claimant's case-in-chief, I must now dissent.

In doing so, I agree with Employer (and even the Majority acknowledges) that, nowhere in the Special Rules of Administrative Practice and Procedure Before Referees, 34 Pa.Code §§ 131.1–131.122, does it indicate that hearings must be transcribed. In addition, while Section 418 of the Workers' Compensation Act,[1] 77 P.S. § 833, provides that a Workers' Compensation Judge (WCJ) must make "a record of hearings," it does not indicate that all hearings must be memorialized. Claimant essentially urges this Court to hold that **all** hearings, whether evidentiary or otherwise, must be transcribed and made of record. However, this is a procedural issue where the Department of Labor and Industry, pursuant to Section 422(e) of the Act, 77 P.S. § 836, has been granted authority to adopt rules to govern administrative proceedings before WCJs. Again, no rule was adopted requiring that all hearings before a WCJ must be transcribed and made of record. Moreover, the WCJ, in his decision, indicated that it was common practice for a

---

9. Indeed, Dr. Tadduni repeatedly stated that he had been fooled at both of Claimant's medical examinations into believing that Claimant had some ongoing restrictions. (R.R. at 81a, 83a.)

1. Act of June 2, 1915, P.L. 736, *as amended* (Act). Section 418 of the Act, 77 P.S. § 833, was added by Section 6 of the Act of June 26, 1919, P.L. 642.

WCJ to allow submissions off-the-record; therefore, it was apparently proper for him to admit certain evidence during an off-the-record hearing.

The salient question then becomes whether the WCJ did, in fact, admit Employer's surveillance videotape for purposes of its case-in-chief at the off-the-record hearing and, as previously indicated, my review of the record after remand satisfies me that the WCJ did do so. The WCJ stated that, "[t]he surveillance video had been submitted for Supersedeas purposes **and was then presented as defense exhibit No. 1 and accepted by this Court."** (WCJ's opinion at 3). (Emphasis added.) I believe that this statement is sufficient to conclude that the tape was admitted for substantive purposes, and I would therefore hold that the surveillance videotape was properly admitted into evidence during the off-the-record hearing, and that Dr. Tadduni could rely on the videotape in forming his medical opinion.[2] *See Thompson v. Workmen's Compensation Appeal Board (Bethlehem Steel Corporation, Freight Division)*, 683 A.2d 1315 (Pa.Cmwlth.1996) (medical experts may rely on surveillance videotapes in forming their expert opinions so long as there is substantial, competent evidence of record to support their position).

Although I voice my disdain for a procedure whereby evidence may be submitted at off-the-record hearings because I believe it tends to preclude effective appellate review, for the reasons set forth above, responsibility for ameliorating such a practice does not lie with this Court.[3]

Accordingly, I would reverse the Board's order and grant Employer's termination petition.

---

2. I recognize that Dr. Tadduni could not rely exclusively on the surveillance videotape in rendering his opinion. I believe, however, that Dr. Tadduni based his opinion, not just on the videotape, but also upon his physical examination of Claimant, along with numerous medical records and reports generated by other physicians who examined Claimant.

Thus, there was other substantial, competent evidence of record to support Dr. Tadduni's position.

3. I also note that Claimant does not raise the issue of whether the failure to transcribe violates Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504.