IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania | : |
| | : |
| v. | : No. 945 C.D. 2024 |
| | : Submitted: October 9, 2025 |
| $2,669.50 Cash, U.S. Currency | : |
| | : |
| Appeal of: James H. Goode | : |


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                             FILED: January 14, 2026


James H. Goode (Goode) appeals, *pro se*, from the Court of Common Pleas of Berks County's (trial court) order dated February 20, 2024 (Order), which granted the Commonwealth of Pennsylvania's (Commonwealth) petition for forfeiture (Forfeiture Petition) of $2,669.50 cash in United States currency (Currency) the police seized from Goode when the police arrested him for violations of The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act),[1] under the

---

[1] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101 to 780-144.

provisions of the Controlled Substance and Forfeiture Act (Forfeiture Act).[2]  After review, we affirm.

## BACKGROUND

On October 23, 2020, the Commonwealth filed its Forfeiture Petition seeking forfeiture of the Currency.  The trial court held a hearing on February 16, 2024.  At the hearing, the Commonwealth called Officer Gregory Zawilla of the City of Reading Police Department (Officer Zawilla) to testify.  Reproduced Record (R.R.) at 23.[3]  Officer Zawilla testified that on November 1, 2018, he was assigned to watch for Goode to exit an apartment located at 501 Buttonwood Street in Reading, Pennsylvania (the Apartment), and to arrest him upon his exit.  *Id*. at 24.  Officer Zawilla saw Goode exit the Apartment at approximately 1:42 p.m. and took Goode into custody.  *Id*.  Officer Zawilla searched Goode upon his arrest, and found two sets of keys, two cellular phones, a wallet with cash inside, and a BMW vehicle key. *Id*. at 24-25.

Next, the Commonwealth called Criminal Investigator Matt Niebel of the City of Reading Police Department's Vice Unit (Niebel), whom the trial court admitted as an expert in narcotics sales and trafficking.  *Id*. at 27, 34-35.  Niebel testified as follows.  On October 31, 2018, Niebel obtained a search warrant for the Apartment based on previous controlled narcotics purchases from Goode.  *Id*.  After the police arrested Goode on November 1, 2018, Niebel and several other officers searched the Apartment.  *Id*.  The officers gained entry to the Apartment with a code and the keys seized from Goode by Officer Zawilla.  *Id*. at 28.

---

[2] 42 Pa.C.S. §§ 5801-5808.

[3] References to the reproduced record reflect electronic pagination.

Inside the Apartment, Niebel found suspected marijuana, cocaine, and heroin inside two containers in the kitchen, as well as firearms inside the residence. *Id*. at 29. The cocaine was in individual packets, the heroin was in several bundles of 10 packets each, and the crack cocaine was a bulk amount. *Id*. at 31. The police also found numerous packets of marijuana that appeared to be packaged for individual sale. *Id*. at 32. The officers also found a bottle of anastrozole, which Niebel testified is "commonly used as a cut for cocaine." *Id*. at 35. Niebel located various items he knew to be used in the distribution of narcotics and for packaging and processing drugs, including clear baggies, baking soda, and acetone. *Id*. at 35-38.

Niebel also testified that Goode's wallet, which Officer Zawilla seized from Goode, contained $1,630.00 in cash, and Goode had another $346.00 in cash in his pocket. *Id*. at 40-41. Additionally, the police located another $432.00 in cash and $133.50 in cash in the plastic containers in the kitchen in the Apartment. *Id*.[4] Moreover, the police tested the suspected narcotics, which tested positive as marijuana and crack cocaine. *Id*. at 43. Niebel opined the narcotics found in the Apartment were packaged and possessed with the intent to deliver. *Id*. at 42. The police charged Goode with possession with intent to deliver (PWID) under the Drug Act and unlawful possession of a firearm. *Id*. at 43-44.

On cross-examination, Niebel further explained the basis for his determination that the Currency was related to the illegal sale of narcotics. *Id*. at 60-62. Specifically, he noted when an officer finds money in two different locations on a person, such as here in Goode's pocket and in his wallet, it could be indicative of

[4] We observe the sum of these amounts equals $2,541.50, and the Commonwealth did not present testimony or evidence of any additional currency seized. In its 1925(a) Opinion, the trial court acknowledges the record accounts for a forfeiture of only $2,541.50, rather than the $2,669.50 it ordered forfeited in its Order.

the individual reaching into a pocket frequently for drug sales, while protecting other money from possible robbery. *Id*.

At the hearing, Goode brought to the trial court's attention that the Commonwealth *nolle prossed* the underlying criminal charges related to this incident. *Id*. at 46. The Commonwealth confirmed, explaining Goode had been sentenced to 37 years in federal prison and thus, the Commonwealth no longer wished to expend funds to prosecute Goode in the underlying case. *Id*.

Goode testified on his own behalf. *Id*. at 69. Goode explained he owned a business called Good Money, LLC, a clothing company also selling "oils and colognes and all types of . . . different scents." *Id*. at 47. Goode testified he filed tax returns, but he did not bring copies with him to the hearing, and he had a business bank account, but he failed to produce any records from that account. *Id*. at 47-48, 56-57. Additionally, Goode testified the Currency "had nothing to do with anything illegal." *Id*. at 48. Goode claimed the seized money was not marked or used in the controlled purchases alleged in the investigation. *Id*. at 49. Goode indicated the drugs in the Apartment were for personal consumption by his girlfriend and himself. *Id*. at 69. He stated the money found on his person was proceeds from his clothing stand. *Id*. at 70.

Following the hearing, the trial court concluded the Commonwealth satisfied its burden of demonstrating, by a preponderance of the evidence, a clear nexus between the currency seized and the illegal distribution of narcotics, as evidenced by the drugs, processing materials, and packaging found at Goode's Apartment. *Id*. at 12. The trial court found Goode's statements indicating the drugs found in his apartment were for personal use and the Currency was proceeds from his business lacked credibility. According to the trial court, Goode's statements were

4

improbable, and he failed to produce supporting evidence for his testimony. *Id.* Accordingly, the trial court entered its Order granting the Commonwealth's Forfeiture Petition.

Goode appeals the trial court's Order.[5] Goode states the questions involved in this appeal as follows:

I. WHETHER THE 2/20/24 ORDER PERMITTING THE COMMONWEALTH TO KEEP OVER $2,660.50 IN CASH AND PROPERTY VALUED AT $4,463 SEIZED IN THE CRIMINAL ACTION CP-06-CR-0000080-2019 THAT WAS SUBSEQUENTLY NOLLE PROSSED IN A SEPARATE COURT ORDER OF THE SAME COURT ON FEBRUARY 9, 2023, VIOLATES COORDINATE JURISDICTION AND RES JUDICATA DOCTRINES, AND PENALIZES APPELLANT BY THE SEIZURE OF HIS LAWFULLY OWNED CASH MONEY AND PROPERTY AFTER THE CRIMINAL ACTION WAS UNFOUNDED AND NOLLE PROSSED?

. . . .

II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING THE COMMONWEALTH TO KEEP PROPERTY UNLAWFULLY SEIZED FROM APPELLANT ON NOVEMBER 1, 2018 IN A CRIMINAL CASE THAT WAS THEN NOLLE PROSSED ON FEBRUARY 9, 2023?

. . . .

III. WHETHER THE UNLAWFUL[] SEIZURE OF APPELLANT'S CASH MONEY AND PROPERTY FROM FIRST HIS PERSONS ON THE 500 BLOCK OF BUTTONWOOD STREET AND THEN FROM THE RESIDENCE 501 BUTTONWOOD STREET, APT. 1, VIOLATES THE STATE AND FEDERAL CONSTITUTIONS GUARANTEES AFTER ONE COMMON PLEAS COURT ENTERED A FEBRUARY 9, 2023 ORDER TO NOLLE PROSSED

_____

[5] Initially, Goode filed his appeal to the Pennsylvania Superior Court, which transferred the matter to this Court pursuant to Pa.R.A.P. 751(a) by order filed June 14, 2024.

THE CRIMINAL ACTION, BUT A SEPARATE COMMON PLEAS COURT ON FEBRUARY 20, 2024 ENTERED AN ORDER REFUSING TO RETURN APPELLANT'S CASH MONEY AND PROPERTY SEIZED IN THE CRIMINAL ACTION TO ITS LAWFUL OWNER, THE APPELLANT, ALLOWING THE COMMONEALTH TO UNJUSTLY KEEP APPELLANT'S CASH MONEY AND PROPERTY WITHOUT JUST COMPENSATION IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTION AND LAWS GOVERNING ONE['S] PROPERTY?

Goode's Br. at 5 (capitalization in original).[6] In response, the Commonwealth asserts the trial court acted within its discretion in finding that the Commonwealth proved by a preponderance of the evidence the Currency was subject to forfeiture under the Forfeiture Act. Commonwealth's Br. at 1. Additionally, the Commonwealth asserts Goode waived his constitutional claims because he failed to raise them before the trial court and is raising them for the first time on appeal. *Id*.

## DISCUSSION

In an appeal from a forfeiture proceeding, this Court reviews whether the trial court abused its discretion or committed an error of law, and whether the trial court's findings of fact are supported by substantial evidence. *Commonwealth v. 1997 Chevrolet*, 106 A.3d 836, 847 (Pa. Cmwlth. 2014). We are deferential to the trial court's findings so long as they are supported by substantial evidence. *Id.*

---

[6] Pennsylvania Rule of Appellate Procedure 2116(a) provides:

> The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. *No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby*.

Pa.R.A.P. 2116 (emphasis added). Here, consistent with Pa.R.A.P. 2116, we address the issues Goode raised in his Statement of Questions Involved section of his Brief. However, insofar as Goode attempts to argue additional issues in his brief, those issues are waived and will not be addressed.

The Forfeiture Act permits the forfeiture of property exchanged for drugs or used or intended to be used to facilitate any violation of the Drug Act. *See* 42 Pa.C.S. § 5802. In relevant part, the Forfeiture Act provides the following are subject to forfeiture:

(A) Money . . . or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of [the Drug Act], and all proceeds traceable to such an exchange.

(B) Money . . . or other things of value used or intended to be used to facilitate any violation of [the Drug Act].

42 Pa.C.S. § 5802(6)(i)(A)-(B).

In a forfeiture proceeding involving seized money, the Commonwealth has the burden of proving, by a preponderance of the evidence, a nexus between the money and a violation of the Drug Act. *Commonwealth v. Burke*, 49 A.3d 542, 546 (Pa. Cmwlth. 2012). A preponderance of the evidence equates to a "more probable than not" standard. *Commonwealth v. $32,950.00 U.S. Currency*, 634 A.2d 697, 698 n.9 (Pa. Cmwlth. 1993). While the Commonwealth may satisfy its burden by circumstantial evidence, it must demonstrate more than a "possibility or a mere suspicion of a nexus." *Commonwealth v. $301,360.00*, 182 A.3d 1091, 1097 (Pa. Cmwlth. 2018).

In the forfeiture proceeding, the Commonwealth must initially prove:

(1) . . . the money was furnished or intended to be furnished in exchange for a controlled substance, (2) . . . the money represents proceeds traceable to such an exchange, or (3) . . . the money was used or intended to be used to facilitate a violation of the [Drug] Act.

*Commonwealth v. $34,440.00 U.S. Currency*, 174 A.3d 1031, 1039 (Pa. 2017). When money is found in close proximity to controlled substances possessed in

violation of the Drug Act, it is presumed to be derived from selling controlled substances. 42 Pa.C.S. § 5802(6)(ii). Our Supreme Court has held this rebuttable presumption may be sufficient to satisfy the Commonwealth's initial burden of demonstrating a nexus between seized money and prohibited drug activity under the Forfeiture Act. *$34,440.00 U.S. Currency*, 174 A.3d at 1041. Once the Commonwealth satisfies its burden of proving a substantial nexus between the seized money and illegal drug activity, the burden then shifts to the party opposing forfeiture to prove: (1) he owns the money, (2) he acquired it lawfully, and (3) he did not use or possess the money for an illegal purpose. *Burke*, 49 A.3d at 546 (citation omitted). This gives the claimant an opportunity to persuade a court the money has an alternative origin. *$34,440.00 U.S. Currency*, 174 A.3d at 1043-44.

Here, the trial court found, and the record supports, the police found packaging materials, including used and unused baggies, consistent with the distribution of drugs, as well as bulk and individual packets of crack cocaine and marijuana in containers in Goode's Apartment. The police also found baking soda, and anastrozole, products known by the police to be used in processing drugs. As Goode exited the Apartment, police arrested him and searched him, finding the Currency in separate locations on his person, which Niebel testified is indicative of trafficking narcotics. Additionally, the police found some of the Currency in containers in the kitchen, the same location the police found the narcotics. Ultimately, the trial court determined the Commonwealth "fulfilled its burden of establishing that the money was found in close proximity to the narcotics." R.R. at 9. Consequently, the burden then shifted to Goode. While Goode testified and offered the trial court an alternative explanation for why he had the Currency, the trial court rejected Goode's testimony, finding his explanation was not credible. *Id.*

8

Accordingly, the trial court properly determined, based on its findings, the Currency was derived from the sale of controlled substances found at the Apartment.

Throughout his Brief, Goode makes various factual assertions that are not supported by the record, which we must disregard. *See Kimberly Clark Corp. v. Workers' Comp. Appeal Bd. (Bullard)*, 790 A.2d 1072 (Pa. Cmwlth. 2001) (noting items that are not part of the record may not be considered by an appellate body on review). Insofar as Goode would have this Court ignore the trial court's findings and reweigh the evidence in his favor, we decline to do so. *See Lodge v. Robinson Twp. Zoning Hearing Bd.*, 283 A.3d 910, 925 (Pa. Cmwlth. 2022) (stating the trial court as factfinder is "the ultimate judge of credibility and resolves all conflicts in the evidence"); *see also City of Phila., Bd. of Pensions & Ret. v. Clayton*, 987 A.2d 1255, 1262 (Pa. Cmwlth. 2009) (indicating the factfinder "is free . . . to believe all, part, or none of the evidence"). Because the trial court's findings are supported by substantial evidence in the record, we defer to its factual determinations. *See Pinnacle Amusement, LLC v. Bureau of Liquor Control Enf't*, 298 A.3d 447, 450 (Pa. Cmwlth. 2023) (citation omitted).

Regarding Goode's assertion that because the Commonwealth *nolle prossed* the underlying criminal charges, the trial court erred by granting the Forfeiture Petition, we disagree. The Pennsylvania Supreme Court has held that to establish a basis for currency forfeiture, the Commonwealth "need not produce evidence directly linking the seized property to illegal activity, nor is a criminal prosecution required to establish the requisite nexus." *$34,440.00 U.S. Currency*, 174 A.3d at 1039 (citation omitted). The Commonwealth demonstrated the required nexus through the testimony of Niebel and Officer Zawilla, and Goode's conviction was not necessary for the Commonwealth to satisfy its burden.

9

Furthermore, we discern no merit in Goode's arguments regarding either res judicata or the coordinate jurisdiction rule. The doctrine of res judicata applies to bar a subsequent suit on the same claim after the relevant appeal period has expired. *Commonwealth v. Perez*, 941 A.2d 778 (Pa. Cmwlth. 2008) (citation omitted). Moreover, the coordinate jurisdiction rule requires that "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court." *Lock v. City of Phila.*, 895 A.2d 660, 668 (Pa. Cmwlth. 2006). This forfeiture matter is a separate action from any underlying criminal case, and there is no evidence in the record of previous litigation. Additionally, there was no transfer of this matter between judges of coordinate jurisdiction. Accordingly, neither doctrine is applicable.

Finally, regarding Goode's constitutional claims, we agree with the Commonwealth that Goode did not preserve those issues for appeal. "Generally speaking, issues not properly raised and preserved before the trial court 'are waived and cannot be raised for the first time on appeal.'" *Commonwealth v. Armolt*, 294 A.3d 364, 376 (Pa. 2023) (quoting Pa.R.A.P. 302(a)). Goode did not raise any state or federal constitutional claims before the trial court, but he did reference his constitutional claims in his Pa.R.A.P. 1925(b) statement. We note a "Rule 1925(b) statement cannot resurrect an otherwise untimely claim." *Steiner v. Markel*, 968 A.2d 1253 (Pa. 2009). Nowhere prior to his 1925(b) statement did Goode refer to any state or federal constitutional claims before the trial court. Accordingly, Goode waived those constitutional claims.

**CONCLUSION**

Based on the trial court's findings, which are supported by substantial evidence in the record, the trial court properly determined the Commonwealth proved, by a preponderance of the evidence, a substantial nexus between the Currency and a violation of the Drug Act. Goode failed to persuade the trial court he possessed the money for a lawful purpose, and thus he did not rebut the presumption the Currency was derived from selling controlled substances. Therefore, we discern no error of law or abuse of discretion in the trial court's conclusions. However, notwithstanding that we discern no error in the trial court's determinations, as the trial court noted in its 1925(a) Opinion, the record accounts for the forfeiture of $2,541.50 rather than $2,669.50. Accordingly, we affirm the trial court's Order with the modification that the amount of currency forfeited is $2,541.50.[7]

_____
STACY WALLACE, Judge

---

[7] *See* 42 Pa.C.S. § 706 ("An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances.").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania | : |
| | : |
| v. | : No. 945 C.D. 2024 |
| | : |
| $2,669.50 Cash, U.S. Currency | : |
| | : |
| Appeal of: James H. Goode | : |

**O R D E R**

**AND NOW**, this 14th day of January 2026, the Court of Common Pleas of Berks County's order dated February 20, 2024, is **AFFIRMED**, with the modification that the amount forfeited is $2,541.50.

_____
STACY WALLACE, Judge